A90A0694. NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION v. CITY OF CALHOUN.
(393 SE2d 510)

POPE, Judge.

The parties, appellant North Georgia Electric Membership Corporation ("North Georgia EMC") and appellee City of Calhoun ("City") supply electric service to Gordon County, Georgia, and are subject to the provisions of the Georgia Territorial Electric Service Act ("Territorial Act"), OCGA § 46-3-1 et seq. In 1975, pursuant to the provisions of the Territorial Act and the rules of the Georgia Public Service Commission ("PSC"), the parties entered into a Territorial Agreement, providing, inter alia, for the assignment of certain areas of Gordon County to the parties for the purpose of supplying electric service. The Territorial Agreement was subsequently approved by the PSC and incorporated as part of the territorial assignment of Gordon County. At issue here is language in the agreement which provides that "the City . . . shall not extend its lines at any time . . . east of I-75."

In 1983 the City began construction of a raw water in-take facility ("facility") which was located east of I-75. This facility, which provides a portion of the primary water supply for the City of Calhoun, is owned and operated by the City. North Georgia EMC has supplied electricity to the facility since its completion. However, by letter dated July 28, 1987, the City notified North Georgia EMC of its intent to "assume . . . electric service" to the facility beginning March 1, 1988.

On September 2, 1987, North Georgia EMC filed a petition with the PSC contending that the City's stated intention to provide electric service to the facility was in violation of the Territorial Act and the Territorial Agreement. The case was assigned to a hearing officer and the parties filed briefs and joint stipulations of fact. The PSC

hearing officer issued a decision finding that the facility was a premises devoted to public service as provided by OCGA § 46-3-8 (e) (5) and concluded that, pursuant to said code section, the City was entitled to furnish electric service to the facility. The hearing officer also concluded that the action of the City in supplying electric service to its own premises did not constitute a "retail" sale of electric service and hence was not precluded by the Territorial Agreement. On April 11, 1989, the PSC denied North Georgia EMC's application for review. The Superior Court of Fulton County affirmed the decision of the PSC and this appeal followed. *Held*:

At issue in this case is the construction and application of various provisions of the Territorial Act and the Territorial Agreement entered into by the parties here. North Georgia EMC "while conceding that the [f]acility is the [City's] own premises devoted to public service" contends that the Territorial Agreement, specifically that portion stating "that the City . . . shall not extend its lines at any time . . . east of I-75," constitutes a waiver of any right the City might have had to supply electric service to the facility under the exception provided in OCGA § 46-3-8 (e) (5). We disagree.

As the parties stipulated, the Territorial Agreement was entered into "[p]ursuant to the provisions of the [Territorial] Act and the rules of the [PSC]" and was made part of the territorial assignment of Gordon County. Thus the Territorial Agreement can be understood only by reference to the Territorial Act. Turning first to the definitional provisions of the Territorial Act, OCGA § 46-3-3 (1) defines an "assigned area" as "an enclosed geographic area assigned *to* only one electric supplier by the commission or by this part, and inside which the assignee electric supplier shall have the exclusive right to extend and continue furnishing service to new premises, *except as otherwise provided in this part*." (Emphasis supplied.) Thus, it is apparent that the legislature contemplated exceptions to the exclusive right of an electric supplier to provide service to new premises within its assigned area, as was the situation in the case at bar. As found by the PSC, one of these exceptions is found at OCGA § 46-3-8 (e) (5), which states: "[N]otwithstanding any other provision of this part, . . . (5) Any electric supplier may extend and furnish service to any of its own premises devoted to public service, whether the same shall have already been served by another electric supplier. . . ." In our opinion this exception gives the City the clear and unambiguous right to serve its own facility, provided the premises at issue are "devoted to public service" whether or not the premises are located in an area otherwise "assigned" to another electric supplier. The reasoning behind this exception is obvious and is clearly illustrated by the facts of this case: If the City is allowed to supply electric service to its own facility, instead of purchasing that service from another electric supplier at

whatever cost to the City, a substantial savings will be realized by the City which, conceivably, will ultimately be passed along to the public served by the facility.

Moreover, we also agree with the PSC's conclusion that the Territorial Agreement is not applicable to the situation here because, as the parties stipulated, the Agreement relates only "to *retail* electric service within [the] territory of Gordon County, Georgia." Although the term "retail service" is not defined in the Territorial Act, "retail" is defined in Webster's Third New International Dictionary (Unabridged 1961) as "to sell directly to the ultimate consumer." Employing a similar definition, the PSC concluded that the City's provision of electric service to its own facility would not constitute a retail sale and hence the Territorial Agreement did not give North Georgia EMC the exclusive right to provide service to the facility. Although the exception relied on here, OCGA § 46-3-8 (e) (5), contains the term "service," which is defined in OCGA § 46-3-3 (9) as "retail service," reviewing OCGA § 46-3-8 (e) (5) in its entirety clearly shows that this code section does not pertain to a sale of electric service to the ultimate consumer but rather contemplates a specific situation wherein the electric supplier would "furnish" electric service to its own facility devoted to the "public service." Thus, for this reason also we agree that the PSC correctly concluded that the Territorial Agreement, which the parties stipulated pertained only to the supply of retail electric service, does not demand a finding that North Georgia EMC had the exclusive right to provide electric service to the premises at issue here. "[T]he PSC, as the agency charged with . . . the enforcement and administration of the Georgia Territorial Electric Service Act, is entitled to great deference in its interpretation of the Act. The administrative interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight." (Citations and punctuation omitted.) *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60, 63 (363 SE2d 286) (1987). Accordingly, the trial court did not err in affirming the decision of the PSC.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED APRIL 16, 1990.

*James C. Brim, Jr., Robert C. Richardson, Jr., Kinney, Kemp, Pickell, Sponcler & Joiner, L. Hugh Kemp*, for appellant.

*Hurt, Richardson, Garner, Todd & Cadenhead, L. Clifford Adams, Jr., Gerald W. Bowling, Robert J. Middleton*, for appellee.