A91A0068. BOARD OF NATURAL RESOURCES et al. v.
WALKER COUNTY et al.
(407 SE2d 436)

BEASLEY, Judge.

This case involves the Georgia Hazardous Waste Management Act, OCGA § 12-8-60 et seq.

We granted discretionary appeal to the Director of the Environmental Protection Division of the State Department of Natural Resources (EPD), the State Board of Natural Resources (Board), and Redox, Inc., from an order of the superior court which reversed two orders and a final decision of the administrative law judge (ALJ) affirming EPD's issuance of a permit to Redox for the construction and operation of a hazardous waste treatment and storage facility in unincorporated Walker County.

Following issuance of the permit, Walker County and its commissioner petitioned for a hearing and review before an ALJ appointed by the Board pursuant to OCGA § 12-2-2 (c) (2). The petition raised in excess of 90 questions. It alleged, inter alia, that EPD's actions in issuing the permit were arbitrary, capricious, an abuse of discretion or

an unwarranted exercise of discretion because:

(A) The waste management process described in the permit application did not fully and completely comply with applicable law and did not provide for the protection of the general health and welfare of the county's citizens.

(B) The described waste analysis plan did not fully comply with applicable law and did not provide for protection of the citizens' general health and welfare.

(C) The described procedures to prevent hazards did not fully and completely comply with the law and did not provide for protection of the citizens' general health and welfare.

(D) The water supply in the area of the proposed facility would be unreasonably endangered.

(E) The application and permit did not adequately address the problem of air pollution.

(F) Adequate water with sufficient pressure was not available at the proposed site to combat a fire of any magnitude.

(G) The application and permit failed to require any type of automatic fire fighting system.

(H) There was a failure to consider the accident potential of transporting the chemicals prior to treatment.

(I) There was a failure of adequate procedure for controlling mixtures or combinations of wastes that have a delayed reaction time.

(J) There was no adequate contingency plan to cover temporary or permanent overloads of hazardous wastes.

(K) There was a failure to require procedures to control disposal of waste residues from testing and rejected shipments. The petition also alleged that the notice of the public hearing for permitting the facility, as required by OCGA § 12-8-66 (h), was insufficient inasmuch as there was not 30 days notice prior to the date of the public hearing.[1]

EPD and the county filed cross-motions for a summary determination on the question of adequacy of notice.[2]

On August 22, 1989, the ALJ issued an order in favor of EPD. He rejected the county's contention that OCGA § 1-3-1 (d) (3) applied to computing time under OCGA § 12-8-66 (h) so as to render the notice insufficient.

---

[1] Effective March 30, 1989, OCGA § 12-8-66 (h) was amended to require 45 days notice of the public hearing.

[2] OCGA § 12-2-2 (c) (2) requires that the hearing before the administrative law judge be conducted in accordance with Chapter 13 of Title 50, the Georgia Administrative Procedure Act, and the rules and regulations adopted by the Board pursuant to it. While the Act does not expressly provide for summary judgment, see OCGA § 9-11-56, or a summary determination procedure, it does provide that in contested cases, the rules of evidence as applied in the trial of civil nonjury cases in the superior courts is to be followed. See OCGA § 50-13-15 (1).

EPD also moved for partial summary determination on 79 legal issues raised by the county's petition. On October 26, 1989, the ALJ issued a lengthy and detailed order granting EPD a favorable determination on 71 of the issues and denying summary decision on the other eight.

As a result of the summary determinations granted to EPD, the scope of the eventual administrative hearing was limited to 12 legal questions involving the remaining nine areas:

(1) Adequacy of the water supply for fire fighting.

(2) Construction and operation of the facility in terms of preventing or controlling fires, explosions, or unplanned releases.

(3) Prevention of accidental ignition or reaction of wastes.

(4) Arrangements with local fire, police, and emergency authorities.

(5) The schedule for inspections of equipment at the facility.

(6) Containment of spills or leaks of hazardous materials and of any contaminated water from fire fighting or rain.

(7) Treatment and handling of the drums used to transport or store hazardous wastes.

(8) Provisions for sampling wastes upon arrival.

(9) The potential for groundwater contamination.

On February 23, 1990, the ALJ issued a 34-page final decision, addressing in detail the remaining legal challenges to the permit and affirming its issuance. The county petitioned the superior court for judicial review. The court determined:

(1) The ALJ erred in his August 22, 1989, order because there was insufficient public notice in that the days were to be computed in accordance with OCGA § 1-3-1 (d).

(2) The ALJ erred in his October 26, 1989, order when he granted EPD a favorable summary determination with respect to 23 issues because in each instance the ALJ incorrectly construed the provisions of 40 CFR § 270.32 (b) (2). As to each of these issues the county submitted affidavits which created factual issues as to whether the matter raised should have been required as a condition to issuance of the permit or specified as a term of the permit in order to protect human health and the environment.

(3) In the October 26 order, the ALJ erroneously determined as a matter of law that the provisions of 40 CFR Part 264, Subpart J, governing the use of tanks at hazardous waste facilities, were not applicable to the Redox facility.

(4) The Redox application was insufficient because the contingency plan and emergency procedures described in the application did not describe arrangements agreed to by local police departments, fire departments, hospitals, contractors, and state and local emergency services as required by 40 CFR §§ 270.14; 264.52 (c); and

264.37.

(5) Review of the ALJ's three decisions showed that substantial rights of the county and its commissioner had been prejudiced because the ALJ's determinations were in violation of statutory provisions and affected by legal error.

1. As to notice, OCGA § 12-8-66 (h) as then in effect provided that in regard to the required public hearing, "[t]he date, time, location, and purpose of such public hearing shall be advertised in the legal organ of the county in which the facility is proposed at least 30 days in advance of the date set for the hearing."

EPD first published notice of the public hearing in the legal organ for Walker County on August 19, 1988. The public hearing was held on Monday, September 19, 1988, 31 calendar days following the date of publication of the notice.

OCGA § 1-3-1 (d) (3) is a rule of statutory construction relating to computation of time which "is prescribed for the exercise of any privilege or the discharge of any duty, . . ." Even if it is applicable, notice was not untimely. Inasmuch as there was no action to be taken on the thirtieth day, i.e., Sunday, September 18, it made no difference that the thirtieth day fell on a Sunday. See *Merritt v. Gate City Nat. Bank*, 100 Ga. 147, 148 (1) (27 SE 979) (1897); see also *Heard v. Phillips*, 101 Ga. 691, 692 (1) (31 SE 216) (1897).

The superior court's order reversing the ALJ's order of August 22, 1989, on the sufficiency of the notice for want of one day is error.

2. Appellants contend that the superior court erred in reversing the ALJ's grant of summary determination on 14 legal issues raised in the county's petition by erroneously interpreting 40 CFR § 270.32 (b) (2) to give EPD unlimited authority and discretion to include within a hazardous waste facility permit any and all terms and conditions which EPD's Director deemed "necessary to protect human health and the environment," in the face of a specific and applicable regulation governing a particular aspect of the project.

40 CFR § 270.32 (b) provides in relevant part: "(1) Each RCRA [Resource Conservation and Recovery Act, 42 USC § 6901 et seq.] permit shall include permit conditions necessary to achieve compliance with the Act and regulations, including each of the applicable requirements specified in Parts 264 and 266 through 268 of this chapter. In satisfying this provision, the Administrator may incorporate applicable requirements of Parts 264 and 266 through 268 of this chapter directly into the permit or establish other permit conditions that are based on these parts.

"(2) Each permit issued under section 3005 of this act shall contain terms and conditions as the Administrator or State Director determines necessary to protect human health and the environment."

The county maintained and the superior court agreed that the

ALJ had been too restrictive in his interpretation of the applicability of the cited regulation, and that EPD had the authority under the broad language of subsection (b) (2) to include within the permit various additional terms and conditions even if those terms and conditions were not covered by or in conflict with the applicable regulation.

The ALJ was correct in his analysis and rejection of the county's position. As the ALJ stated in his order, "[s]uch a reading would eliminate the standards for hazardous waste facility permits established by the Board" when the permit terms and conditions sought to be added were outside the specific applicable standard. The additional permit terms and conditions sought by the county either disregarded or contradicted in part or in whole a specific regulatory requirement found in 40 CFR Part 264. Adoption of the proposed additions, even if the ALJ found them to be "necessary to protect human health and the environment" would have substantially eliminated or circumvented the mandates of the explicit and governing Board regulations, which tracked the CFR. While the broad language of the subsection arguably gives EPD's Director the authority to add complementary terms and conditions not in conflict with the established standards, it does not confer on the Director the right to supplant the standards. Moreover, subsection (b) (2) must be read in conjunction with the entire regulatory scheme. Subsection (b) (1) of the regulation expressly provides for the establishment of other permit conditions *based* on the stated standards. See 40 CFR § 270.32 (b) (1), supra. Therefore, proposed terms not in some manner addressed by or based on the applicable Board standard are not permissible for consideration as additional permit terms.

The superior court erred in reversing the ALJ's determinations in his order of October 26, 1989, based on its interpretation of the language of 40 CFR § 270.32 (b) (2). Whether or not the affidavits submitted by the county raised material questions of fact about the proposed additional terms and conditions was irrelevant because the regulation did not confer on EPD's Director the authority to add the permit terms proposed by the county. That decision was the Board's, not the Director's.

3. Appellants contend that the superior court erred in reversing the ALJ's determination that the provisions of 40 CFR Part 264, Subpart J, governing the use of tanks at hazardous waste facilities, was not applicable to the Redox facility inasmuch as the county failed to introduce any admissible evidence to counter the evidence submitted by appellants on summary determination motion.

In its petition before the ALJ, the county contended that the proposed facility would utilize "tanks" so that 40 CFR, Subpart J requirements applied. Appellants' position was that the subpart did not govern because the facility would utilize "containers" rather than

"tanks."

40 CFR § 260.10 defines "tank" as "a stationary device, designed to contain an accumulation of hazardous waste which is constructed primarily of non-earthen materials (e.g., wood, concrete, steel, plastic) which provide structural support." It defines "container" as "any portable device in which a material is stored, transported, treated, disposed of, or otherwise handled." A critical distinction between the two is portability.

In support of its motion for summary determination, appellants submitted the affidavit of an environmental specialist with the EPD who had technical and supervisory responsibility for the proposed facility. The affidavit stated in part that "[t]he mixing chambers and other treatment and storage chambers at the Redox facility are all movable or portable in some fashion." He also gave direct testimony in the application procedure that a factor in minimization of hazard at the Redox facility was the use of containers as opposed to tanks in the waste treatment process. He explained that the attributes of containers provided advantages over tanks in some aspects of waste handling not immediately seen; their smaller size limited the volume of a spill in the event of structural failure; containers were stronger structurally than tanks on a relative basis; tanks generally were used to contain waste of greater magnitude than typical containers; one other comparable facility in Georgia had two tanks, each of 20,000 gallon capacity, used in a stabilization treatment process otherwise nearly identical to that proposed by Redox; the containers Redox proposed for use in its stabilization and absorbent admixture operations were much smaller, limited to about 650 gallons capacity; the portable nature of containers allowed removal of leaking containers to controlled areas, where mitigation could better be accomplished; the absence of provision for uncontrolled automatic filling limited the possibility of unattended overfill of containers.

In opposition, the county submitted the affidavit of its own expert who had reviewed the relevant permit material. This affidavit stated, "[t]he mixing chamber is a tank as that term is defined in 40 CFR § 260.10."

The ALJ determined that the statement, which addressed solely one vessel at the facility and which constituted the county's only evidentiary response, was conclusory and that such response was insufficient to establish an issue of material fact. This led to a favorable ruling for appellants on 13 county-raised issues related to permit application deficiencies for noncompliance with the standards for tanks.

First, the ALJ did not determine that the county's evidence was "inadmissible" but rather that it was insufficient to withstand appellants' showing and thereby raise a material issue of disputed fact.

Second, assuming that the subject statement in the county's affi-

davit was indeed "conclusory," i.e., not based on a factual foundation such as whether the chamber was portable or not, that alone would not render it inadmissible but would affect its weight. See *Woods v. Andersen*, 145 Ga. App. 492, 494 (4) (243 SE2d 748) (1978) [physical precedent]. However, "[c]onclusory allegations by way of an affidavit, unsupported by specific allegations of fact, will not be sufficient to avoid summary judgment. [Cit.]" *Swanson v. Lockheed Aircraft Corp.*, 181 Ga. App. 876, 879 (1b) (354 SE2d 204) (1987); see also *Collins v. West American Ins. Co.*, 186 Ga. App. 851, 852 (3) (368 SE2d 772) (1988).

Lastly, even if the affidavit statement about one vessel in the entire facility were not conclusory, it was insufficient, in light of appellants' showing, to raise a *material* issue of disputed fact regarding the type of vessels to be used throughout the facility.

The superior court's reversal of the ALJ's order of October 26, 1989 with respect to the applicability of 40 CFR, Subpart J is error.

4. Appellants contend that the superior court erroneously applied, or ignored, the standards for review of administrative decisions found in OCGA § 50-13-19 when it rejected the ALJ's conclusion that the permit met the requirements of 40 CFR § 264.37 (a) (1)-(4). The superior court concluded that the application was insufficient in the described contingency plan and emergency procedures because of noncompliance with 40 CFR § 270.14 and 40 CFR § 264.52 (c) in addition to 40 CFR § 264.37 (a) (1)-(4). See statement of facts, supra.

The three regulations must be read in conjunction with each other and in the context of a facility yet to be built. 40 CFR § 264.37 (a) (1)-(4) provides that the owner or operator of the hazardous waste facility specify *attempts* to make arrangements with local authorities, i.e., police, fire, medical personnel, etc., for emergency situations. 40 CFR §§ 264.52 (c) and 270.14 (b) (7) require that a contingency plan, i.e., plan for dealing with an emergency situation, describe arrangements *agreed to* by local police and fire departments, hospitals, contractors, and state and local emergency response teams to coordinate emergency services.

As the ALJ stated in his final decision, the permit application reflected that Redox had made efforts to coordinate emergency services. These included formal and informal meetings with local fire officials and contacts with county officials and local medical facilities to include their telephone numbers and addresses in the contingency plan, which required coordination with local fire, police, and medical emergency personnel. The permit was thus in compliance with 40 CFR § 264.37 (a) (1)-(4). The facility was not yet in existence, so formal coordination agreements were not yet appropriate or required. This accounts for the absence of a description of them in the application.

Furthermore, the subject regulations have the obvious purpose of ensuring that a permit will not issue, and hence a hazardous waste facility will not be built, unless there is a plan in place to deal with emergency situations. As the ALJ noted in the final determination, the permit was expressly conditioned upon arrangements with local officials as required by 40 CFR § 264.37. The purpose of the regulations was fulfilled.

The superior court erroneously reversed the ALJ's final determination on the basis that the application was deficient because "agreed to" arrangements were not described.

5. Appellants contend that the court failed to confine its review to the record and substituted its judgment for that of the ALJ on questions of fact as demonstrated by the court's finding, without elaboration, that the ALJ's determinations were in violation of statutory provisions and affected by error of law.

Appellants correctly observe that the reviewing lower court may not substitute its judgment as to the weight of evidence on questions of fact and may reverse or modify the agency decision only if substantial rights of the appealing party have been prejudiced because the administrative determination was in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error of law; clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion. OCGA § 50-13-19 (h). See *Bentley v. Chastain*, 242 Ga. 348 (249 SE2d 38) (1978) for a discussion of the judicial review of administrative decisions. See also *Georgia Dept. &c. Protection Div. v. Union Timber Corp.*, 258 Ga. 873, 877 (6) (375 SE2d 856) (1989).

The massive record in this case does not show that the ALJ's determinations were in violation of any of the cited federal and state statutory provisions or affected by legal error. See Divisions 1, 2, 3, and 4, supra. Nor does it demonstrate that the administrative rulings in any of the manners claimed prejudiced substantial rights of the county and its commissioner. There was no basis shown for reversal of the challenged decisions of the administrative law judge under OCGA § 50-13-19 (h).

*Judgment reversed. Banke, P. J., and Carley, J., concur.*

DECIDED JUNE 19, 1991 —
RECONSIDERATION DENIED JULY 3, 1991 — 

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Harrison W. Kohler, Robert S. Bomar, Senior Assistant Attorneys General, Weinstein, Rosenthal &*

*Tobin, Michael S. Rosenthal*, for appellants.
*Watson & Dana, Dennis D. Watson, Joseph F. Dana*, for appellees.