A93A1565. HOSPITAL AUTHORITY OF GWINNETT COUNTY
v. STATE HEALTH PLANNING AGENCY et al.
A93A1566. SAINT JOSEPH'S HOSPITAL OF ATLANTA, INC. v.
COBB COUNTY/KENNESTONE HOSPITAL AUTHORITY et al.
A93A1567. STATE HEALTH PLANNING AGENCY v. COBB
COUNTY/KENNESTONE HOSPITAL AUTHORITY et al.

(438 SE2d 912)

JOHNSON, Judge.

The Hospital Authority of Gwinnett County and the Cobb County/Kennestone Hospital Authority applied to the State Health Planning Agency for certificates of need to provide open heart surgery services. The planning agency denied the applications. Both Gwinnett and Kennestone appealed to the State Health Planning Review Board, which consolidated the appeals and allowed St. Joseph's Hospital of Atlanta, Inc., and Piedmont Hospital, Inc., to intervene as existing open heart surgery service providers. The review board affirmed the planning agency's denial of both applications. Gwinnett and Kennestone then appealed to the superior courts of their respective counties. The Gwinnett County Superior Court affirmed the review board's denial of the Gwinnett application, while the Cobb County Superior Court reversed the review board's denial of Kennestone's application. The Hospital Authority of Gwinnett County appeals from the decision of the Gwinnett County Superior Court; St. Joseph's and the planning agency appeal from the decision of the Cobb County Superior Court. Because these appeals raise the same issues, they are consolidated for our review.

1. The general assembly has created a statewide health planning system to be administered by the planning agency and the review board. OCGA § 31-6-1 et seq. The public policy and purpose of this system "are to ensure that adequate health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state. To achieve this public policy and purpose, it is essential that appropriate health planning activities be undertaken and implemented and that a system of mandatory review of new institutional health services be provided. Health care services and facilities should be provided in a manner that avoids unnecessary duplication of services, that is cost effective, and that is compatible with the health care needs of the various areas and populations of the state." OCGA § 31-6-1.

In carrying out this policy and purpose, health care facilities are required to apply for and receive certificates of need from the planning agency before they are allowed to offer certain services, including open heart surgery. OCGA §§ 31-6-2 (4), (5); 31-6-40. OCGA § 31-6-42 (a) provides that the planning agency's grant or denial of certifi-

cates of need "shall be based on the applicable considerations specified in this Code section and reasonable rules promulgated by the planning agency interpretive thereof." In the instant cases, the applicable considerations are found in OCGA § 31-6-42, State Health Planning Agency (SHPA) Rule 272-2-.08 and SHPA Rule 272-2-.09 (13). The considerations set forth in SHPA Rule 272-2-.08 are essentially the same as those set forth in OCGA § 31-6-42 and apply to all health care services for which a certificate of need is required. The considerations contained in SHPA Rule 272-2-.09 (13) apply only to adult open heart surgery services.

2. Kennestone and Gwinnett argue that the review board improperly emphasized the general considerations of SHPA Rule 272-2-.08 and OCGA § 31-6-42 over the specific considerations of SHPA Rule 272-2-.09. There is no way for this court to determine whether the review board placed more emphasis on either the specific or general consideration, since the board cites numerous considerations in its written decision and does not indicate that any single consideration is more important than another. Even if we assume that the review board interpreted the applicable statute and the planning agency's own rules in such a way to place more emphasis on certain considerations, that interpretation is entitled to deference by this court. The interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference. *North Ga. E.M.C. v. City of Calhoun*, 195 Ga. App. 382, 384 (393 SE2d 510) (1990); *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60, 63 (363 SE2d 286) (1987).

Moreover, the position of Kennestone and Gwinnett that the specific criteria should prevail over the general considerations is premised on a rule of law that is inapplicable to the instant cases. Kennestone and Gwinnett rely upon the rule of statutory construction that a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any *inconsistency* between them. *City of LaGrange v. Troup County E.M.C.*, 200 Ga. App. 418, 423-424 (2) (408 SE2d 708) (1991); *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984). The reliance of Kennestone and Gwinnett on this rule is misplaced because, as both hospital authorities note in their briefs, the general and specific rules at issue in these cases are not inconsistent. Rather, the specific criteria set forth in SHPA Rule 272-2-.09 are intended by both the legislature and the planning agency to supplement and interpret the more general concepts found in SHPA Rule 272-2-.08 and OCGA § 31-6-42. See SHPA Rule 272-2-.08 (2); *North Fulton Community Hosp. v. State Health &c. Agency*, 168 Ga. App. 801, 804 (2) (310 SE2d 764) (1983). Because the general and specific criteria applicable to the instant cases are not in conflict, the hospital authorities' posi-

tion is without merit.

3. Kennestone and Gwinnett further claim that the review board not only emphasized the wrong criteria, but in fact failed to consider the specific criteria set forth in SHPA Rule 272-2-.09 (13). This claim is wholly without merit, as a review of the board's written decision plainly shows that it cited and discussed the applicable specific criteria contained in SHPA Rule 272-2-.09 in addition to the general criteria. SHPA Rule 272-2-.09 (13) (b) (1) sets forth four conditions which must be met before a new adult open heart surgery service shall be approved. The review board did not refer to the first three conditions in its written decision, and therefore we presume for purposes of this appeal that Kennestone and Gwinnett met each of those three conditions. The board did, however, specifically address the fourth condition, which provides that "an applicant shall document that authorized adult open heart surgery services in the state are not predicted to be adversely impacted as a result of the establishment of the new service." SHPA Rule 272-2-.09 (13) (b) (1) (iv). The rule then sets forth several methods for determining adverse impact. The method applicable to the instant cases provides that establishment of the new service will have an adverse impact if "an existing service which performed 350 or more procedures in the most recent year . . . would perform less than 350 procedures annually as a result of loss of open heart surgery referrals, unless the reduction in the existing service's annual total volume would be ten percent or less." SHPA Rule 272-2-.09 (13) (b) (1) (iv) (I). The review board expressly found that establishment of an open heart service at either Kennestone or Gwinnett would adversely impact the existing open heart service at Piedmont Hospital by reducing its procedures to fewer than 350 annually and by more than ten percent of its total annual volume. Since the face of the review board's decision clearly shows that it was based on the applicable considerations set forth in SHPA Rule 272-2-.09, the claim of Kennestone and Gwinnett to the contrary is incorrect.

4. Kennestone and Gwinnett contend that the review board's finding that establishment of an open heart surgery service at either hospital would adversely impact the existing service at Piedmont is not supported by sufficient evidence. A reviewing court may reverse this finding only if it is "[n]ot supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the 'any evidence' standard." OCGA § 31-6-44 (i) (5). In the present cases, there is substantial evidence to support the board's finding. An expert witness testified that establishment of the new service at Kennestone or Gwinnett would reduce the number of procedures performed annually at Piedmont to less than

350 and by more than ten percent of its total annual volume. The expert explained the basis for this testimony and was thoroughly cross-examined about this opinion.

Kennestone and Gwinnett challenge the basis of the expert's opinion. Those challenges, however, go only to weight and not the admissibility of the expert's opinion. *Krause v. Vance*, 207 Ga. App. 615, 616 (1) (428 SE2d 595) (1993). A reviewing court may not substitute its judgment as to the weight of evidence on questions of fact. *Bd. of Nat. Resources v. Walker County*, 200 Ga. App. 301, 308 (5) (407 SE2d 436) (1991). The expert's relevant testimony is such that a reasonable mind might accept it as adequate to support the review board's finding that establishment of an open heart service at either Kennestone or Gwinnett would adversely impact the existing service at Piedmont. The review board did not err in denying certificates of need to both Kennestone and Gwinnett on this basis. The Gwinnett County Superior Court thus properly deferred to the review board's decision denying the Gwinnett Hospital Authority's application for a certificate of need. The Cobb County Superior Court, however, exceeded its role as a reviewing court and erred in reversing the board's decision denying Kennestone's application. The ruling of the Gwinnett County Superior Court is therefore affirmed and the ruling of the Cobb County Superior Court is reversed.

5. The parties' remaining arguments are either moot or without merit.

*Judgment affirmed in Case No. A93A1565, and judgment reversed in Case Nos. A93A1566 and A93A1567. Pope, C. J., McMurray, P. J., Birdsong, P. J., Beasley, P. J., Cooper, Andrews and Smith, JJ., concur. Blackburn, J., dissents.*

BLACKBURN, Judge, dissenting.

In approving the State Health Planning Agency Review Board's denial of the applications for a certificate of need filed by the Cobb County/Kennestone Hospital Authority and the Hospital Authority of Gwinnett County, the majority opinion upholds a factual finding based upon mere conjecture rather than substantial evidence, and pays only "lip service" to the specific rule governing adult open heart surgery services promulgated by the state agency. I believe that both Kennestone and Gwinnett were entitled to a certificate of need for their proposed adult cardiac surgery programs, and therefore respectfully dissent.

Centralized governmental regulation of the health care industry is, to a significant degree, antithetical to our entire system of free enterprise. The notion that economic forces of supply and demand will control the quality and costs of goods and services is a concept of economic liberty that is just as basic to our system of government as

the personal liberty we enjoy and so closely guard. A fundamental conflict exists between that notion of economic liberty and the notion, embraced by the majority opinion, that more governmental regulation can increase quality of health care at lower costs. It may be that governmental regulation is part of the problem and not the cure, and in reviewing the acts of the regulatory agency, courts should insist upon strict compliance with the statutory and regulatory delineations of the agency's responsibilities. Consistent with that concern is the requirement that the agency's findings must be supported by *substantial* evidence.

OCGA § 31-6-42 (a) provides that "[t]he written findings of fact and decision, with respect to the planning agency's grant or denial of a certificate of need, shall be based on the applicable considerations specified in this Code section and reasonable rules promulgated by the planning agency interpretive thereof." That Code section delineates 14 general criteria for determining whether to grant a certificate of need. Rule 272-2-.08 of the Rules of the SHPA reiterates the general criteria contained in OCGA § 31-6-42. Rule 272-2-.09 (13) provides specific requirements for approval of adult open heart surgery services.

In 1989, the State Health Policy Council convened a technical advisory committee to assess the State Health Plan for specialized cardiovascular services and the certificate of need rules. The committee's recommendations were submitted to and accepted by the State Health Policy Council as the Component Plan for Specialized Cardiovascular Services. This Component Plan generally advances the concept of regionalization of open heart surgery services.

In its decision dated October 7, 1992, the Review Board held that the specific regulation governing open heart surgery services contained in Rule 272-2-.09 merely supplements the general criteria for issuing a certificate of need. The Review Board pointed out that fifteen open heart surgery programs currently operate in Georgia, seven of which are located in the Atlanta area. Although Kennestone and Gwinnett proposed to make adult open heart surgery services available, or more convenient, to a large geographic area outside the metropolitan Atlanta area, some of their projected service area overlapped the area serviced by St. Joseph's Hospital and Piedmont Hospital. The focus of the Review Board's evaluation of the projected impact of the proposed new programs thus pertained to the existing open heart surgery programs at the latter two hospitals.

The Review Board concluded that approval of new adult open heart surgery programs at either Kennestone or Gwinnett would negatively affect the existing programs operated by the other hospitals in the same service area, based upon several findings or considerations: the population bases that Kennestone and Gwinnett would serve al-

ready have geographic access to adult open heart surgery services; the number of expected open heart surgeries was expected to decline due to technological advances and new practice guidelines, and thus providers of adult open heart surgery services would be sharing fewer patients in the future; the existing providers were capable of performing additional open heart surgeries without incurring additional expenses; physicians who practiced near Kennestone and Gwinnett would likely refer patients to those facilities, and thus Piedmont Hospital, which has a relatively new program, particularly would lose referrals at an unacceptable level; specifically, Piedmont Hospital's volume of procedures would fall below 350 and more than ten percent of its annual production, losing at least 40 surgeries per year if either Kennestone's or Gwinnett's applications were approved; Kennestone and Gwinnett proposed to utilize the same group of cardiac surgeons who already operated out of St. Joseph's Hospital and Piedmont Hospital, which would likely impact those existing programs because of the shortage of cardiac surgeons and support staff in the service area; and approval of the new programs would decrease referrals to the existing programs and such a lowering of utilization would result in escalated charges, a negative effect on health care payors.

In reversing the Review Board's decision in Kennestone's appeal, the Cobb County Superior Court concluded that the Review Board erred in relying upon and applying the general criteria rather than following the specific adult open heart surgery services rule, as that rule provides substance and specificity to those general considerations. The superior court found unrefuted evidence that Kennestone's application complied with the requirements of that specific rule, and that the Review Board's findings regarding the adverse impact Kennestone's proposed program would have on the existing operations were not supported by substantial evidence. Specifically, the court rejected the finding that the number of Piedmont Hospital's procedures would decrease by more than ten percent and below 350 annually, and pointed out that no findings were made regarding how Kennestone's program may adversely impact the existing program at St. Joseph's Hospital.

In affirming the Review Board's decision in Gwinnett's appeal, the Gwinnett County Superior Court relied upon the general criteria for determining whether to grant a certificate of need contained in OCGA § 31-6-42, rather than the specific rule. Further, the superior court found that the Review Board's decision was supported by substantial evidence, specifically noting that "in relation to the issue of referrals lost by Piedmont the decision of the Board refers to referrals made by primary care physicians, non-invasive cardiologists and other physicians who practice near Gwinnett and not only to referrals made from physicians on the staff at Gwinnett Medical Center."

The general criteria for determining certificate of need applications contained in OCGA § 31-6-42 and SHPA Rule 272-2-.08 include, in part, the following: the proposed new health services must be consistent with the general goals and objectives of the state health plan; the population residing in the area to be served must have a need for the services; the new service must not have an unreasonable effect on health service payors; the proposed program will have a positive relationship to the existing health care delivery system in the service area; and the proposed new service will foster improvements or innovations in the financing or delivery of health services, promote health care quality assurance or cost effectiveness, or foster competition that results in lower patient costs without a loss of quality of care.

If those general criteria alone governed the determination of certificate of need applications regarding adult open heart surgery services, the voluminous record in these cases probably contains substantial evidence to support a decision either to grant or deny the applications filed by Kennestone and Gwinnett. For every thrust, there appears to be at least an equally persuasive parry. For example, the existing providers contend that reduction in the number of cardiac procedures performed at their facilities would tend to escalate the charges for those services in order to recover the expenses associated with providing such services. That contention, however, is balanced by general economic principles of supply and demand; if the supply of services increases, the charge for those services tends to become more competitive. The current providers emphasize that no real need exists for new adult open heart surgery programs because those services are already available in the same geographic area. However, that argument is somewhat disingenuous, as it ignores the considerable inconvenience for cardiac patients and their families residing in Cobb County and Gwinnett County and outlying regions forced to commute to the downtown Atlanta area in order to receive such services. Having a physician make a house call, of course, is a thing of the past; the instant cases demonstrate that in this modern day, even great obstacles now confront health care providers who merely seek to make health care services available in their patients' communities. This is a development brought about not only by existing providers, whose economic interests motivate their resistance to new providers, but also by the State of Georgia through the SHPA.

The existing providers assert that the quality of available cardiac services will be diminished because Kennestone and Gwinnett propose to utilize the same cardiac surgical group currently operating out of their programs. However, this cynical view presumes that the cardiac surgeons involved would deliberately overextend themselves and provide inferior medical care. There is no basis in fact in the record

for such an assumption. Considering the risks involved in this particular type of health care, an equally strong presumption arises that the cardiac surgeons would not agree to participate in the establishment of adult open heart surgery programs at Kennestone and Gwinnett if those physicians doubted their ability to provide quality care.

As discussed above, the Cobb County Superior Court found that the general criteria alone do not govern determinations of certificate of need applications. Rather, SHPA Rule 272-2-.09 narrows the focus of that determination, and provides specific and definite requirements that must be met before adult open heart surgery services may be approved. The Cobb County court properly applied that specific rule in deciding Kennestone's appeal.

"Implicit in the interlocking parts of the statutory scheme is the legislative intent that the Review Board use the [general] considerations as a base, filling the interstices of the statutory considerations with the agency's rules interpreting and implementing them. What was implicit in the statutory scheme has now been made explicit." *North Fulton Community Hosp. v. State Health &c. Agency*, 168 Ga. App. 801, 804 (310 SE2d 764) (1983). For purposes of interpretation of statutes, "the specific statute will prevail over the general statute, absent any indication of a contrary legislative intent." *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668, 670 (317 SE2d 897) (1984). The same principle should apply with regard to interpretation of regulations promulgated by an administrative agency. Where a specific rule, by its express terms, governs a particular situation, it must be applied. Cf. *Dogwood Square Nursing &c. v. State Health Planning Agency*, 255 Ga. 694 (341 SE2d 432) (1986).

The requirements of Rule 272-2-.09 (13) include: (1) the applicant must operate an existing adult cardiac catheterization service in an acute hospital setting which generated 180 or more open heart surgeries in the 12-month period preceding the application; (2) the applicant must project that the new open heart surgery service will be performing at least 200 open heart surgeries within three years of the initiation of the program; and (3) the applicant must document that the existing providers are not predicted to be adversely impacted by the establishment of the new service. With regard to existing programs that perform over 350 open heart surgeries annually, the rule defines adverse impact as decreasing the existing program's number of such procedures to fewer than 350 annually, unless the reduction was less than ten percent of the total annual volume.

In the instant cases, it was uncontroverted that both Kennestone and Gwinnett operate adult cardiac catheterization services which generated 180 adult open heart surgeries within the pertinent 12-month period, and that each proposed program projected the performance of at least 200 open heart surgeries within three years of its

initiation. The evidence showed that in 1989, Kennestone made 165 referrals to St. Joseph's Hospital for open heart surgery, and Gwinnett made 203 such referrals to St. Joseph's Hospital. There was no documentation of any definite open heart surgery referrals to Piedmont Hospital made by either Kennestone or Gwinnett. Considering the fact that in 1989, St. Joseph's Hospital performed over 1,400 open heart surgeries (and in 1990, over 1,500), the resulting loss of referrals from Kennestone and Gwinnett would not reduce the annual number of procedures at St. Joseph's Hospital and Piedmont Hospital below 350. Under Rule 272-2-.09, approval of the proposed new adult open heart surgery services at Kennestone and Gwinnett would not have an adverse impact on the existing programs operated by St. Joseph's Hospital and Piedmont Hospital.

In determining what impact the proposed programs at Kennestone and Gwinnett would have on the existing programs at St. Joseph's Hospital and Piedmont Hospital, the Review Board considered the possibility of existing providers' loss of referrals from physicians who practice in the area of Kennestone and Gwinnett but who are not on the staffs of those two hospitals. However, the number of actual referrals currently made by Kennestone and Gwinnett staff physicians to existing open heart surgery providers is the appropriate measure of impact which would be suffered by those existing programs upon the approval of the proposed programs at Kennestone and Gwinnett. The Component Plan itself addresses this issue in stating that "[f]or operational services which have established sources and documented quantity of referrals, a major element of impact can be quantified to a reasonable degree. By assuming that the hospital proposing to establish a new service basically would stop making OHS referrals and would retain and serve these patients in its own OHS service, the number of referrals predicted to be lost can be deducted from the total volume of existing services to determine the anticipated extent of impact." To consider potential loss of referrals from other sources than the staffs of Kennestone and Gwinnett substitutes speculation and conjecture for the objective and definite method of quantification adopted in the Component Plan.

In concluding that a certificate of need should not be issued to Kennestone or Gwinnett, the Review Board also relied upon the fact that the existing providers have the present capacity to increase the number of procedures they perform. However, in the 1989 Component Plan, the technical advisory committee indicated that "[a]fter evaluating a number of options for establishing a method of determining need for new adult open heart surgery services, including methods for projecting need in areas of the state, as well as the need method included in the 1986 Component Plan requiring achievement of a combined use rate of 80% of capacity of services in a Health Service

Area," it adopted instead a "facility specific" need methodology. The capacity of existing providers may remain an appropriate concern under the general criteria contained in OCGA § 31-6-42 and Rule 272-2-.08, but the specific rule governing adult open heart surgery services omits consideration of existing capacity.

Although great deference is afforded an agency's administrative interpretation of a statute or rule, *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60 (363 SE2d 286) (1987), no such deference is due where the agency fails to apply the proper rule. See *Dogwood Square Nursing &c. v. State Health Planning Agency*, supra. In the instant cases, the Review Board's evaluation concentrated on the general criteria delineated in OCGA § 31-6-42 and Rule 272-2-.08, and failed to place primary emphasis upon Rule 272-2-.09, the specific rule governing approval of an application for a certificate of need for adult open heart surgery services. The evidence is essentially uncontroverted that both Kennestone and Gwinnett met the clear and specific criteria of Rule 272-2-.09. For that reason, I would find that the Cobb County Superior Court properly ordered issuance of a certificate of need to Kennestone, and that the Gwinnett County Superior Court erred in failing to do likewise.

The majority opinion disagrees that primary emphasis must be placed upon the specific criteria regarding open heart surgery services contained in Rule 272-2-.09 rather than the general criteria regarding approval of certificates of need contained in Rule 272-2-.08, on the grounds that no inconsistency exists between the specific and the general criteria. However, inasmuch as the Review Board's determinations on Kennestone's and Gwinnett's applications would be supported by substantial evidence under the general criteria, but are not supported by substantial evidence if the specific criteria are applied, it seems that the majority is mistaken in its conclusion regarding the absence of any inconsistency.

Further, in concluding that substantial evidence supports the Review Board's findings concerning the adverse impact of the proposed programs at Kennestone and Gwinnett, the majority opinion perpetuates the same error made by the Review Board and the Gwinnett County Superior Court, i.e., considering the number of potential referrals from all physicians who practice in the service areas of Kennestone and Gwinnett as the measure of adverse impact, rather than the number of actual referrals from those two facilities to existing open heart surgery programs. The proper (and less speculative) measure of adverse impact is to consider the number of actual referrals from the facilities seeking the certificates of need.

The expert witness, upon whose testimony the majority relies, applied the incorrect measure of adverse impact by considering the potential referrals of all physicians operating in the service areas.

However, the expert acknowledged that the number of *actual referrals* from Kennestone and Gwinnett *would not* establish an adverse impact upon the existing providers if consideration of such referrals constitutes the appropriate measure; for example, she did not dispute that in 1988 Kennestone made no open heart surgery referrals to Piedmont and only 165 to St. Joseph's. She further conceded that under her analysis of adverse impact based upon all potential referrals, no new open heart surgery programs would ever be approved in the metropolitan Atlanta area.

As discussed above, the Cobb County Superior Court applied the correct measure of adverse impact, unlike the Review Board and the Gwinnett County Superior Court. In applying that proper measure, the Cobb County court correctly concluded that the evidence demanded finding that no adverse impact would result from the approval of open heart surgery services at Kennestone. The evidence likewise demands such a finding with regard to approval of an open heart surgery program at Gwinnett. The judgment of the Cobb County Superior Court should be affirmed, and the judgment of the Gwinnett County Superior Court should be reversed. I dissent from the majority opinion's contrary conclusions.

DECIDED NOVEMBER 19, 1993 —
RECONSIDERATIONS DENIED DECEMBER 10, 1993 AND DECEMBER 15, 1993 — ▮▮▮▮▮▮▮

*Powell, Goldstein, Frazer & Murphy, Randall L. Hughes, Adrienne E. Marting, Kim H. Roeder, W. Howard Fowler*, for Gwinnett Medical Center.

*Michael J. Bowers, Attorney General, Dennis R. Dunn, Senior Assistant Attorney General*, for State Health Planning Agency.

*Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Thomas D. Watry, Cauthorn & Phillips, Thomas E. Cauthorn III, John Page, Oxendine & Associates, John W. Oxendine*, for St. Joseph's Hospital.

*Glass, McCullough, Sherrill & Harrold, John A. Sherrill, Deborah L. Britt, Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Benny C. Priest*, for Kennestone Hospital.

