## A99A2439. HOOKS v. COBB CENTER PAWN & JEWELRY BROKERS, INC.

(527 SE2d 566)

McMURRAY, Presiding Judge.

Appellant-plaintiff Daniel Hooks pawned his car, a 1990 BMW 535i which he valued at $8,000, for a $300 loan from appellee-defendant Cobb Center Pawn & Jewelry, Inc., secured by allowing the defendant to hold the title to the vehicle. The plaintiff attempted to redeem the vehicle approximately one month after the loan's maturity date; however, the defendant refused to accept payment as untimely, repossessed the vehicle, and later sold it for $2,000. Thereafter, plaintiff sued defendant alleging violations of certain of the State's title pawn statutes, its civil and criminal usury laws, breach of contract, conversion, and bad faith. The superior court granted defendant's motion for summary judgment and, by silence thereon, impliedly denied plaintiff's motion for partial summary judgment as to the issue of liability. Plaintiff appeals. For the reasons which follow, we affirm in part and reverse in part.

1. Summary judgment is properly granted

> when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684).

2. Citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680), plaintiff claims that the superior court erred in granting summary judgment to defendant in that defendant's evidence in support of its motion for summary judgment was contradictory for its admission that plaintiff appeared to have signed a second document at the time he signed the pawn ticket while contemporaneously denying that the document was a part of the parties' agreement. Id. at 28 (1), 30. In this regard, plaintiff argues that the agreement between the parties consisted of two documents — the pawn ticket executed upon the loan he received and a second document as to which he asserts defendant has given contradictory testimony in support of its motion for summary judgment purporting to: (a) give him the right to recover the value of his vehicle as it exceeded the balance owing on such loan upon repossession, and (b) make him personally liable on the loan beyond the title in the vehicle he originally

gave thereon as collateral.

The record reflects that defendant supported its motion for summary judgment by affidavit given by a corporate representative asserting that the pawn ticket constituted the entire agreement between the parties. Upon being deposed by plaintiff, such representative adhered to his affidavit, identified the second document as a repossession document, and, asked if the second document constituted a part of the agreement between the parties, testified only that the document appeared to have been signed by the plaintiff and that it was an "extra document" not necessary to the agreement. On its face, this testimony does not contradict defendant's testimony indicating that the pawn ticket represented the entire agreement between the parties. Moreover, we note that the document of which plaintiff complains is not signed by the defendant, not notarized as required, and, for preprinted spaces left blank, makes no reference to the vehicle sub judice. Thus, we conclude that *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, supra, is here inapplicable. Further, we conclude that plaintiff has not offered more than allegation and conjecture contradicting defendant's showing that the entire agreement between the parties consisted of the pawn ticket alone. As a consequence, plaintiff has not "borne [his] responsibility to point to specific evidence giving rise to a triable issue" regarding the agreement as consisting of two documents. *Hambrick v. B. G. Swing Games Mgmt.*, 267 Ga. 597, 599 (481 SE2d 816). Accordingly, the superior court properly granted defendant summary judgment as to the pawn ticket as representing the entire agreement between the parties.

3. Plaintiff contends that the superior court erred in granting defendant summary judgment, arguing that the instant title pawn transaction is unenforceable as void under OCGA § 44-12-131 (a) (6) and (b) for the pawn ticket's underrepresentation of the applicable annual percentage rate of interest. In this regard, plaintiff contends that contrary to 300 percent as disclosed by the pawn ticket, the actual annual percentage rate of interest was 304.167 percent, a deviation greater than the tolerance allowed under the Code of Federal Regulations (CFR) § 226.22 (a) (2) (deviation between annual percentage rate of interest disclosed and actual annual percentage rate of interest must not exceed 1/8 of one percent). In this regard, plaintiff correctly points to OCGA § 44-12-138 (b) (5) as requiring that annual percentage rates applicable to pawn transactions in Georgia be calculated under the federal truth in lending law and regulations. Further, he correctly notes that 25 percent is the maximum interest and charges rate allowed Georgia pawnbrokers per 30-day period, OCGA § 44-12-131 (a) (4), and that the Code of Federal Regulations formulates the allowable annual percentage rate of interest

as equal to the unit-period rate times the number of unit-periods per year. 12 CFR § 226, App. J (B) (1).

As to this claim of error, the parties dispute only the number of unit-periods per year as applicable to the annual percentage rate of interest calculation. Citing 12 CFR § 226, App. J (B) (5) (vii) as controlling, plaintiff contends that the correct number of unit-periods in the instant action was 12.167. Defendant argues that the correct unit-period number is 12 citing 12 CFR § 226.17 (c) (3) (iii) (creditor *may* disregard effect of differing numbers of days in the months of year when making calculations and disclosures) and OCGA § 44-12-130 ("month" defined as that period of time from one date in a calendar month to corresponding date in following calendar month). 12 CFR § 226, App. J (B) (5) (vii) provides:

> In a single advance, single payment transaction in which the term is less than a year and is *not* equal to a whole number of months, the number of unit-periods in the term shall be 1, and the number of unit-periods per year shall be 365 divided by the number of days in the term.

(Emphasis supplied.)

We are required to construe the foregoing language literally in the absence of statutory contradiction. *Telecom\*USA v. Collins*, 260 Ga. 362 (1), 363 (393 SE2d 235). So construing such language, we conclude that in single advance, single payment transactions in which the term is less than a year and not equal to a whole number of months, as here, pawnbroker-creditors must make the unit-period determination on the basis of the term as a number of days.[1] Accordingly, in the instant circumstances the allowable annual percentage rate of interest was 304.167 percent (25 percent times 12.167). This is not inconsistent with discretionary authority allowing pawnbroker-creditors to disregard the effects of months having different numbers of days under 12 CFR § 226.17 (c) (3) (iii), in that the term is here not one of months but of a specified number of days. In any event, it is only in the instance that the pawnbroker-creditor has charged interest and charges exceeding the amounts permitted under OCGA § 44-12-131 (a) that the pawn transaction is rendered void. OCGA § 44-12-131 (b). We conclude that defendant has not done so in the case sub judice. Accordingly, the superior court properly granted defendant summary judgment on plaintiff's claim that the instant pawn transaction was unenforceable as void under OCGA § 44-12-131 (a) (6) and (b).

4. Plaintiff contends that the terms of the pawn ticket authoriz-

---

[1] In this instance, 365 divided by 30 or 12.167.

ing defendant to repossess and sell his vehicle for his default are unenforceable under OCGA § 11-2-302, due to unconscionability for inadequacy of consideration. Although OCGA § 11-2-302 by its terms applies to transactions involving a sale, *Interstate Security Police v. C & S Emory Bank*, 237 Ga. 37, 38 (226 SE2d 583), we nonetheless find nothing unconscionable about imposing such terms in a motor vehicle title pawn transaction. *Francis v. Union Bank*, 183 Ga. App. 84 (1), 85 (357 SE2d 837). This is particularly the case when, as here, plaintiff-pledgor-debtor is a sophisticated businessman who deposed that he had previously entered into an identical title pawn transaction with the defendant.

5. The plaintiff also contends that the superior court erred in granting summary judgment to defendant on his remaining tort claim as to defendant's conversion of personal property not returned to him after his car was repossessed. To establish a prima facie case for conversion, plaintiff is required to show title to the property or the right of possession, actual possession in defendant, demand for its return, and defendant's refusal. *Jennette v. Nat. Community Dev. Svcs.*, 239 Ga. App. 221, 225 (4) (520 SE2d 231). The plaintiff deposed that despite his demand, defendant had not returned everything belonging to him taken from his vehicle upon its repossession. Defendant deposed to the contrary. Accordingly, we conclude that the superior court erred in granting defendant summary judgment as to plaintiff's conversion claim for personal belongings taken from his vehicle and not returned after its repossession. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1), supra.

6. Further, the plaintiff contends that the interest charged in this case violated the State's criminal usury statute, OCGA § 7-4-18, for charging him interest in excess of five percent per month by a unified finance charge not setting out interest and pawnbroker charges separately. Correctly noting that this question is one of first impression on appeal, the plaintiff argues that the two statutes may be harmonized, requiring pawnbrokers to set out pawnshop charges not exceeding twenty percent separately. We disagree, concluding that the statutes are in conflict and cannot be reconciled.

Conflict appears on the face of the statutes in at least several fundamental dimensions. First, OCGA § 44-12-131 (a) (4) (A) and (B) apply to both interest and pawnshop charges up to 25 percent for the first 90 days of the loan and 12.5 percent thereafter. This is in conflict with the usury statute's five percent maximum interest rate per month. OCGA § 7-4-18 (a). Second, the pawnbroker statute authorizes an additional 12.5 percent interest charge in the event collateral is redeemed in the statutory grace period. OCGA § 44-14-403 (b) (3). This is inconsistent with the five percent monthly interest limit of the usury statute as well. Third, the statutes are inconsistent as to

storage charges authorized. The usury statute allows a storage charge of $0.25. The pawnbroker statute allows for a daily storage fee of $5. OCGA § 44-12-131 (a) (4) (C) (ii). Lastly, the action at law remedy in superior court for violating the pawnbroker statute substantially differs with the automatic forfeiture of interest and other charges that result upon violation of the usury statute. See OCGA § 44-12-131 (a) (7).

We must look to the general rules of statutory construction in construing conflicting statutes. In this regard, "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any *inconsistency* between them. [Cits.]" (Emphasis in original.) *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912). Moreover, while not favored, a statute may be deemed to have repealed an earlier statute where the statute later in time appears to give comprehensive expression to the whole law on the subject. *Kyles v. State*, 254 Ga. 49, 50 (326 SE2d 216).

Applying the foregoing rules of statutory construction in the case sub judice, we conclude that the pawnbroker statute, OCGA § 44-12-130 et seq., comprehensively and specifically regulates the subject of pawnshop transactions, including, in particular, the amount of interest and charges on any pawn transaction. There is no evidence that the legislature intended it to be otherwise. Moreover, there appears to be evidence of a legislative intent not to cap interest allowable on a pawn transaction to that permitted by the usury statute except to provide that interest and charges on such a transaction not exceed 25 percent of the loan amount, OCGA § 44-12-131 (a) (4) (A) — this because the 1992 amendment to such pawn statute changed the prior law which capped interest on pawn transactions at two percent per month plus other charges. OCGA § 44-12-131. In light of the foregoing, we conclude that the pawnbroker statute here controls, and that the instant transaction is not governed by the five percent limit imposed on general loans by the usury statute. *Kyles v. State*, 254 Ga. at 50, supra; *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. at 408 (2), supra; see *Moore v. Comfed Sav. Bank*, 908 F2d 834, 842 (IV) (B) (11th Cir. 1990) (whether called interest or a pawnbroker charge by the parties to a loan contract, such charges considered interest under usury statute); but see *Fryer v. Easy Money Title Pawn*, 183 Bankr. 654, 656 (S.D. Ga. 1995) (five percent interest cap of usury statute applicable to pawn transactions in that the word "interest" as used in the usury statute not deemed synonymous with terms "interest and pawnshop charges" as used in pawnshop statute).

7. In light of our disposition of Division 2, as above, we need not address plaintiff's remaining claims of error.

*Judgment affirmed in part and reversed in part. Johnson, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 10, 1999 —
RECONSIDERATION DENIED DECEMBER 6, 1999 — 

*Kris K. Skaar, James M. Feagle*, for appellant.
*Cornelison & Van Gelderen, Leon Van Gelderen, John A. Ziolo*, for appellee.