A90A1111. COLQUITT ELECTRIC MEMBERSHIP CORPORATION v. CITY OF MOULTRIE.
(399 SE2d 497)

BIRDSONG, Judge.

The Colquitt Electric Membership Corporation ("EMC") appeals from the judgment of the superior court affirming the decision of the Public Service Commission ("PSC") authorizing the City of Moultrie ("the City") to provide permanent electric service to Colquitt County's new jail.

After Colquitt County selected the City to provide electric service to the new jail, the EMC petitioned the PSC to prohibit the City from providing the service. When the PSC upheld Colquitt County's authority to obtain the service from the City, the EMC appealed that decision to the Superior Court of Fulton County. After conducting the required review (see OCGA § 50-13-19), the superior court affirmed the decision of the PSC, and the EMC now appeals.

Although expressed in several enumerations of error, the thrust of the appeal is that the PSC and the superior court erroneously determined that the new jail and the Colquitt County Correctional Institute ("CCCI") will be separate facilities for purposes of the Act. *Held*:

The new jail is built on land owned by Colquitt County and on which the CCCI is also located. Although the new jail and the CCCI are separate buildings, they are connected by permanent enclosed covered walkways to a new, free-standing dining facility which was built at the same time as the new jail. After completion of the new dining facility, the CCCI's existing dining facility will be closed. Regardless which party provides electric service to the new jail, the EMC will provide electricity to the dining facility since it is part of the CCCI.

The PSC hearing officer found as fact that while the CCCI is owned by the county, it is operated under the supervision and management of the State Department of Corrections because it is a county facility housing state and county prisoners. (See generally OCGA § 42-5-1 et seq.)

The hearing officer also found that the new jail will be primarily a pretrial detention facility, but will also hold some convicted prisoners awaiting transfer to the state prison system and some prisoners convicted of misdemeanors who are also serving sentences. The new jail, however, is under the control of the county sheriff. (See OCGA § 42-4-1 et seq.)

Additionally, the hearing officer found that the City and Colquitt County had agreed that city prisoners will be housed in the county jail, and the City will pay the county an agreed per-prisoner per diem rate. Further, the hearing officer found that the county desired that electric service for the CCCI and the new jail be separately metered, in part, to ascertain the cost of operating the new jail so that an appropriate per diem fee could be charged the City.

The hearing officer also found as fact the new dining facility is an expansion of the CCCI and that it will be under the supervision of the CCCI's warden. Further, while prisoners in the CCCI will be fed in the new dining facility, prisoners in the new jail will be fed in their cells with their food transported from the new dining facility.

The parties stipulated, and the hearing officer found as fact, that both the EMC and the City are electric suppliers within the meaning of the Georgia Territorial Electric Service Act, OCGA § 46-3-1 et seq. ("the Act"), which regulates provision of retail electric service in this state. They also stipulated that the site of the new jail is in an "unassigned area" within the meaning of the Act, that both the EMC and the City have electric lines within 500 feet of the new jail, and that the EMC has provided electric service to the CCCI since 1949.

Therefore, the hearing officer concluded that both the City and the EMC meet the criteria for providing electric service to the area of the new jail, and the EMC would have the exclusive right under OCGA § 46-3-8 (b) to provide electric service to the new jail unless it is a new premises. If the new jail is a new premises, however, then Colquitt County could choose either the EMC or the City to provide electricity.

After considering the definition of premises in OCGA § 46-3-3 (6), the hearing officer concluded that although the CCCI and the new jail are located on the same tract of land and the county will pay both electric bills, the electricity was not furnished to one consumer. This conclusion was based on his determination that the two facilities constituted two separate entities in terms of purpose and operation with two different legal entities responsible for operating the different facilities: the CCCI is supervised and managed by the Department of Corrections to house convicted prisoners and the new county jail is supervised and managed by the county sheriff to house primarily pretrial detainees.

Considering those factors the hearing officer decided that the new

jail facility is not an addition to or extension of the existing CCCI, but is a new premises physically separate from the existing CCCI, and physically distinct with a separate electric system.

"The standard of review of contested cases under the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq., is set forth in OCGA § 50-13-19 (h), which provides in pertinent part that the reviewing court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record [or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion]." (Punctuation omitted.) *Georgia Messenger Svc. v. Ga. Pub. Svc. Comm.*, 194 Ga. App. 340-341 (390 SE2d 283). Moreover, "the PSC, as the agency charged with the enforcement and administration of the Georgia Territorial Electric Service Act, is entitled to great deference in its interpretation of the Act." (Citation and punctuation omitted.) *North Ga. EMC v. City of Calhoun*, 195 Ga. App. 382, 384 (393 SE2d 510).

In reviewing the PSC's decision, we must first consider OCGA § 46-3-3 (6) which defines "premises" as meaning "the building, structure, or facility to which electricity is being or is to be furnished, provided that two or more buildings, structures, or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer shall together constitute one premises; *provided, however, that any such building, structure, or facility shall not, together with any other building, structure, or facility, constitute one premises if the permanent service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility. . . .*" (Emphasis supplied.)

The EMC argues that under OCGA § 46-3-3 (6) the permanent covered walkway connecting the CCCI to the dining facility and the similar walkway from the dining facility to the new jail make all the facilities one premises for purposes of the Act. The City, however, contends that the significant factor is the separate metering and that the walkway does not make the CCCI and the jail one facility.

We do not find controlling the fact that the covered walkway connects the CCCI to the dining facility and the dining facility to the new jail. If we held otherwise, a narrow separation or gap in the covered walkway could require a different result. Instead, we agree with the hearing officer that the walkway, or degree to which the structures are physically separated or connected, is but a factor to be considered with the actual purpose, control, and operation of the structure in

determining whether one electric consumer uses the premises. Further, we find the hearing officer's findings and conclusions that the CCCI and new jail are two electric premises, separately metered, are supported by evidence in the record and are not contrary to or in excess of the PSC's statutory authority, and further, we do not find the PSC decision was arbitrary or capricious.

Moreover, considering the facts of this case, we do not find that this interpretation of "new premises" violates the purpose and intent of the Territorial Act, as both electric providers have lines within 500 feet of the new jail and are otherwise prepared to deliver electric service efficiently and economically. See OCGA § 46-3-2.

Accordingly, we find that the superior court did not err in affirming the PSC decision.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

DECIDED OCTOBER 29, 1990 —
REHEARING DENIED NOVEMBER 30, 1990 — ▆▆▆▆▆▆

*James C. Brim, Jr., Robert C. Richardson, Jr., Moore & Chambless, Saxby Chambless*, for appellant.

*Whelchel, Whelchel & Carlton, Hoyt H. Whelchel, Jr., James C. Whelchel, Mollie F. Glitsis*, for appellee.