S97G1862. ALLTEL GEORGIA COMMUNICATIONS et al.
v. GEORGIA PUBLIC SERVICE COMMISSION.
(505 SE2d 218)

FLETCHER, Presiding Justice.

We granted certiorari in this case to consider the scope of the Public Service Commission's authority to regulate a company that has given notice of its election of "alternative regulation" under the Georgia Telecommunications and Competition Development Act, OCGA § 46-5-160. The court of appeals held that the PSC could review rates until the effective date of alternative regulation, 30 days following the notice of election. Because this construction of when the rate lock-in occurs is most consistent with the legislative intent and avoids rendering a portion of the statute meaningless, we affirm.[1]

---

[1] *Georgia Public Service Commission v. ALLTEL Georgia Communications Corp.*, 227 Ga. App. 382 (489 SE2d 350) (1997).

The appellants (collectively "ALLTEL") are related companies and are "Tier 2"[2] local exchange companies that provide telephone service in mostly rural areas of the state. In 1993 ALLTEL and the Public Service Commission, exercising its regulatory authority, agreed upon a five-year "Regulatory Plan." Under the Regulatory Plan, the PSC permitted ALLTEL to retain any excessive earnings in exchange for making significant capital improvements. The Plan called for periodic earnings reviews and, if ALLTEL's rates of return exceeded an allowed return, required ALLTEL to accelerate its capital expenditures. The rationale for this plan was the PSC's determination that requiring upgraded service was a more appropriate use of ALLTEL's overcharges than a rate reduction because the area over which ALLTEL has a monopoly suffered from such poor service.

In 1995, the Georgia legislature enacted the Georgia Telecommunications and Competition Development Act,[3] which created a new regulatory model for telecommunications services reflecting the transition to market-based competition.[4] The Act allows companies to elect market-based alternative forms of regulation.[5] On June 14, 1996, before the conclusion of the agreed-upon Plan, ALLTEL filed a notice that it was electing alternative regulation and specified July 15, 1996, as the date alternative regulation would become effective. On June 21, 1996, the PSC issued a rule nisi directing an immediate review of ALLTEL's earnings and rates. Following a hearing, the PSC determined that ALLTEL's return on equity earnings exceeded that authorized and ordered ALLTEL to apply its over-earnings to reduce its intrastate access rates. ALLTEL filed a petition for judicial review in superior court and contended that, at the moment of election, the artificially high rates under the Plan became locked-in under OCGA § 46-5-165 (d) and that the PSC lost the authority to review its rates. The superior court held that ALLTEL's rates were deemed just and reasonable on June 14, 1996, the date ALLTEL filed its notice of electing alternative regulation and that the PSC lacked the authority to review rates following the filing of the notice of election. The PSC appealed and the court of appeals reversed.

Under alternative regulation, a company's rates are deemed "just and reasonable" and not subject to traditional PSC regulatory authority.[6] The PSC contends that the rate lock-in does not occur until the effective date of alternative regulation. The effective date is set by the company, but cannot occur until at least 30 days following

---

[2] See OCGA § 46-5-162 (10) (B).
[3] OCGA § 46-5-160 et seq.
[4] OCGA § 46-5-161 (a) (1).
[5] OCGA § 46-5-161 (a) (2, 3) and (b) (1, 5).
[6] OCGA § 46-5-165 (d).

the company's issuance of the notice of election.[7] ALLTEL contends that the rate lock-in occurs the moment the company files its notice of election of alternative regulation.

In reviewing various parts of the statute in isolation, it is unclear whether the rate lock-in occurs on the date the company specifies as the effective date of alternative regulation under OCGA § 46-5-165 (c) or on the date the company files its notice of election. However, if we view the statute as a whole to construe all parts of a statute together "to make all its parts harmonize,"[8] the issue is easily resolved. The most reasonable reading is that "the date a telecommunications company elects" in OCGA § 46-5-165 (d) refers to the date the company specifies as the effective date of alternative regulation under subsection c. This construction is consistent with OCGA § 46-5-166 (b), which specifies that the maximum rates for five years shall be the rates *in effect on the date the local exchange company becomes subject to alternative regulation.* " Otherwise, the statute provides two separate dates for the rate lock-in.

The PSC's construction is also supported by the principle that a court must "give a sensible and intelligent effect to each part [of a statute]. It is not presumed that the legislature intended that any part would be without meaning."[9] OCGA § 46-5-165 (c) provides at least a 30-day window between the filing of a notice of electing alternative regulation and its effective date. Historically, the 30-day delay between filing of rates and their effective dates gave the PSC the opportunity to review the proposed rates and to take action within those 30 days if the rates were not reasonable.[10] If the PSC is without jurisdiction to review rates during the 30 days, the delay lacks a reasonable purpose. Notice, without an opportunity for action, is meaningless. ALLTEL's argument would eviscerate the PSC's traditional role and, since a competitive market has yet to develop, consumers would have no ability to choose another local provider.

Furthermore, a court must identify the legislative intent and construe the statute consistently with that intent. The legislature clearly specified that one purpose underlying the Act was to "[p]rotect the consumer during the transition to a competitive telecommunications market."[11] This purpose is completely frustrated by construing the statute to preclude any PSC review of ALLTEL's rates at the instant ALLTEL files its notice of election. If the Court

---

[7] OCGA § 46-5-165 (c).
[8] *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975).
[9] Id.
[10] See OCGA § 46-2-25 (1972) (If the PSC failed to object to filed rates within 30 days, the rates become effective).
[11] OCGA § 46-5-161 (b) (2).

adopted ALLTEL's contention, the Court would allow ALLTEL to use alternative regulation as a shield to shelter the $24 million in overcharges generated each year under the Regulatory Plan from any PSC review and extend the highly favorable rates of the Plan well beyond the original time period of the Plan. Both of these results frustrate the legislative intent to provide protection to the consumer during the transition period.

Finally, ALLTEL's construction of the statute permits absurd results. It would allow a company to moot a pending rate case by filing a notice of election. Or a company could lock-in rates and avoid any regulation, traditional or alternative, by setting an effective date a year or more past the filing of the notice.

For all these reasons, we conclude that the court of appeals was correct in its construction of OCGA § 46-5-165 (c) and (d).

*Judgment affirmed. All the Justices concur, except Sears, Hunstein and Thompson, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

The majority holds that a telephone company's intrastate access rates are "locked-in," i.e., deemed just and reasonable and no longer subject to traditional Commission regulatory authority, on the date alternative regulation takes effect. Because OCGA § 46-5-165 (d) specifically provides that all existing rates, terms, and conditions for services provided by a company electing alternative regulation are deemed just and reasonable on the date a company *elects* alternative regulation, I respectfully dissent.

In 1995 the Georgia legislature passed the Georgia Telecommunications and Competition Development Act (the "Act"), OCGA § 46-5-160 et seq., in order to create market-based competition for local exchange telephone companies. This legislative goal is accomplished in part by authorizing competition for local exchange services and permitting existing local telephone companies to elect market-based alternative forms of regulation. OCGA § 46-5-161 (a) (2, 3) and (b) (1, 5). To elect alternative regulation, the Act requires a local telephone company to file a notice of election of alternative regulation with the Commission. OCGA § 46-5-165 (b). The Act further provides:

> On the date a telecommunications company elects the alternative regulation described in this article, all existing rates, terms, and conditions for the services provided by the electing company contained in the then existing tariffs and contracts are deemed just and reasonable.

Id. at (d).

When construing a statute a court must first look to the literal

meaning of the act, and if the language is plain and does not lead to absurd or impractical consequences, the court has no authority to place a different construction upon it, but must construe it according to its terms. *Diefenderfer v. Pierce*, 260 Ga. 426 (396 SE2d 227) (1990); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Under OCGA § 46-5-165 (d), a company's rates are deemed just and reasonable "on the date a telecommunications company *elects* the alternative regulation." (Emphasis supplied.) As defined by the Act, the date a company elects alternative regulation is the date the company files a notice of election with the Commission. See id. at (b) (a company "may elect [alternative regulation] upon the filing of notice with the commission and committing to provide basic local exchange services upon reasonable request"). Subsection (d) is clear and unambiguous on its face and expressly deems a company's rates just and reasonable upon the filing of a notice of election with the Commission. Had the legislature intended to extend the authority of the Commission to review rates until the date a company becomes subject to alternative regulation, it clearly would have used such specific language as it did in OCGA § 46-5-166 (b), in which rates for basic local exchange services are established as of "the date the local exchange company becomes subject to alternative regulation."

Despite the clear language of § 46-5-165 (d), the majority holds that a company's rates are deemed just and reasonable on the date alternative regulation becomes effective, thereby violating basic rules of statutory construction precluding courts from placing a different construction upon the terms of an unambiguous statute. See *Diefenderfer*, supra. The majority refuses to interpret § 46-5-165 (d) consistent with its plain language, finding such an interpretation would "eviscerate the PSC's traditional role" and would be inconsistent with the Act's goal of protecting the consumer during the transition to a competitive telecommunications market. Majority opinion at 107. This analysis fails to recognize that it was the primary intent of the legislature, through passage of the Act, to move away from the Commission's traditional regulatory authority and to rely instead on market forces to establish efficient pricing. See OCGA § 46-5-161 (a) (1). Moreover, interpreting § 46-5-165 (d) to deem a company's rates just and reasonable on the date it elects alternative regulation does not thwart the legislative purpose of protecting consumers during the transition to a competitive market and does not leave consumers without protection or the Commission without authority to review and adjust intrastate access rates. The legislature has not entirely deregulated local exchange services by passing the Act, but has instead created a new regulatory model for telecommunication services based on its determination that market-based regulation is in the public interest. OCGA § 46-5-161 (a) (1).

In addition to the protections afforded consumers through market-based competition, the legislature provided other protections within the Act, including the continuing but more limited authority of the Commission to regulate the intrastate switched access rates of companies electing alternative regulation. OCGA § 46-5-166 (f) (2). Under alternative regulation, the Commission is still charged with the responsibility of protecting consumers by insuring that rates are fair and nondiscriminatory, OCGA § 46-5-166 (e); requiring compliance with the rate adjustment provisions of the Act, OCGA § 46-5-168 (6); and preventing companies from engaging in any anticompetitive act, including price squeezing, price discrimination, predatory pricing, or tying arrangements. OCGA § 46-5-169 (4).

Although, like the majority, I have concerns regarding ALLTEL's retention of overearnings authorized by the Regulatory Plan, I believe the majority errs in refusing to follow the plain language of § 46-5-165 (d). I would hold that it is the date a local telephone company elects alternative regulation, not the date alternative regulation becomes effective, that controls in determining when the Commission loses traditional regulatory authority over a company's rates. Applying this interpretation, I would find the Commission was without authority to regulate ALLTEL's rates under its traditional regulatory scheme after ALLTEL filed its notice of election of alternative regulation on June 14, 1996.

I am authorized to state that Justice Sears and Justice Thompson join in this dissent.

DECIDED OCTOBER 5, 1998 —
RECONSIDERATION DENIED NOVEMBER 5, 1998.

*Long, Aldridge & Norman, Albert G. Norman, Jr., Edgar H. Sims, Jr., Bruce P. Brown, Larry C. Dowdy,* for appellants.

*Thurbert E. Baker, Attorney General, Brenda H. Cole, Deputy Attorney General, Harold D. Melton, Alan Gantzhorn, Senior Assistant Attorneys General, Helen O. Leary, Assistant Attorney General,* for appellee.

*Sutherland, Asbill & Brennan, William K. Whitner, C. Christopher Hagy, David I. Adelman, King & Spalding, Joseph R. Bankoff, Lisa W. Greene,* amici curiae.