## A99A0596. WORLD TRADE BUSINESS, INC. v. AMIT, INC.
(521 SE2d 40)

BARNES, Judge.

After World Trade Business, Inc. ("World Trade"), filed suit against Amit, Inc., d/b/a Comfort Inn-Atlanta Airport ("Comfort Inn"), and both parties filed motions for summary judgment, the trial court denied World Trade's motion and granted summary judgment to Comfort Inn. World Trade appeals that judgment. World Trade contends the trial court erred by holding it had no standing under OCGA § 43-21-16 ("the Olympic Anti-Price Gouging Statute"), by denying summary judgment to World Trade and by refusing to hold that the contracts between World Trade and Comfort Inn violated the Olympic Anti-Price Gouging Statute as a matter of law. World Trade also contends the trial court erred by granting summary judgment to Comfort Inn, and by holding the liquidated damages clauses in the contract between Comfort Inn and World Trade were not unenforceable penalties.

The trial court based its grant of summary judgment to Comfort Inn primarily on its determination that World Trade lacked standing to seek relief under the Olympic Anti-Price Gouging Statute, and that is our primary concern in this appeal. As we find the trial court misconstrued the Olympic Anti-Price Gouging Statute, we reverse.

World Trade was authorized by a foreign Olympic Committee to locate hotel accommodations for use by overseas visitors during the Atlanta Olympic games. After locating rooms at the Comfort Inn, World Trade entered into a "Convention Guest Rooms Rental Contract" with Comfort Inn.

The contract stated that World Trade wished to "purchase" and Comfort Inn would guarantee a specified number of guest suites between July 15, 1996, and August 13, 1996, at a designated price per room. World Trade would provide Comfort Inn a list of designated guests, and World Trade would make specified non-refundable payments to Comfort Inn by dates designated in the contract. The contract further provided that World Trade and "its foreign Olympic tourist guests have the right to occupy the guest suites reserved pursuant to this agreement."

Under this contract, the suites were to rent for $143 per night. Comfort Inn, however, also required a separate facilities contract for food and drinks and for the use of the hotel's facilities such as the

hotel's lounge, restaurant, kitchen, atrium, and in-room microwave ovens, hair dryers, and automatic coffee makers. In combination, the room contract and the facilities contract would result in a per room charge of $460 per night. World Trade paid a deposit of $125,000, $100,000 for the facilities contract and $25,000 for the room contract. World Trade did not intend to use the rooms as an organization and did not use them. Instead, the plan was to provide the rooms to others as part of tour packages.

After signing the contracts, World Trade learned that the intended Olympic visitors could not afford such exorbitant room rates and that a Georgia law (the Olympic Anti-Price Gouging Statute) would prohibit renting these rooms at the rates specified in the contracts. When efforts to renegotiate the arrangement with Comfort Inn were unsuccessful, World Trade advised Comfort Inn that it could not use the rooms under the original agreements and requested the return of its deposit. Comfort Inn refused, and after World Trade terminated the contracts, Comfort Inn retained the deposits as liquidated damages under the contracts.

Thereafter, World Trade brought suit to rescind the contract, to recover the deposits paid, and to recover damages authorized by OCGA § 43-21-16. The superior court determined, however, that World Trade was not authorized relief under OCGA § 43-21-16 because World Trade was a hotel operator as defined in subsection (a) (3) of OCGA § 43-21-16: " 'Operator' means the operator of a hotel . . . who conducts the business of providing overnight accommodations to guests. The term operator shall also include brokers, wholesalers, and other persons who purchase and resell hotel rooms." The trial court reasoned that because the "intention of the legislature, as disclosed in OCGA § 43-21-16 (b), [was] to prevent the perceived long term effects from rampant price-gouging during the 1996 Olympic games," and the "purpose of the statute [was] to seemingly protect and allow for a cause of action to be brought by the ultimate consumer," the statute did not "provide protection for brokers, owners, wholesalers, and others similarly situated in the accommodation profession."

World Trade argued below that it had standing under the Olympic Anti-Price Gouging Statute because it paid for the rooms and thus fell within the statutory definition of a guest. A " '[g]uest' means a person who pays a fee to the keeper of an inn for purpose of entertainment at that inn." OCGA § 43-21-1 (1). The trial court rejected this argument because it found that it "could be extended to the absurd conclusion that a credit card company which pays the charges for a room rental in excess of the statutory amount would have a valid cause of action under the statute. Such a conclusion does not comport with the legislative intention as disclosed in the statute."

We disagree with the trial court's analysis of the intended scope of the statute.

1. "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). In this instance, the General Assembly stated both the evil to be prevented and the remedy it selected to accomplish that result. The Olympic Anti-Price Gouging Statute was designed "to protect the state's convention and tourism industries against long-term ill effects that could result from a perception of rampant price gouging during the 1996 Olympic Games." OCGA § 43-21-16 (b) (2). To achieve that end, the General Assembly made it unlawful to charge excessive hotel room rates during the Olympic period, to require renting unnecessary room nights before or after the Olympic period, or to require the purchase of other goods or services to use a hotel room. OCGA § 43-21-16 (d).

Hotel operators who violated the Olympic Anti-Price Gouging Statute would be guilty of price gouging, a misdemeanor (OCGA § 43-21-16 (f)) and subject to civil damages and penalties under OCGA § 43-21-16 (g) (1) (B). Additionally, the Olympic Anti-Price Gouging Statute provided that "[a]ny contract or arrangement for the use of rooms in violation of this Code section, whether entered into before or after the enactment of this Code section, shall be voidable by the person contracting to use such rooms." OCGA § 43-21-16 (g) (1).

In construing the Olympic Anti-Price Gouging Statute to determine whether World Trade had standing to seek such relief, we must first look to the statute's literal meaning, and if the language is plain and does not lead to any absurd or impracticable consequences, we will simply construe the statute according to its terms without conducting further inquiry. *Diefenderfer v. Pierce*, 260 Ga. 426, 426-427 (396 SE2d 227) (1990). In doing so, we give words their ordinary meaning unless they are words of art or words that are given a particular meaning within a particular trade or subject matter. OCGA § 1-3-1 (b). Also, in Georgia the word " '[p]erson' includes a corporation." OCGA § 1-3-3 (14).

Considering the phrase "person contracting to use the rooms" in this context, the only real dispute is over the meaning of "contracting to use." Comfort Inn, like the trial court, would define those words as meaning only actually staying in or occupying the rooms, i.e., personal use of the rooms. We find no definition in the Olympic Anti-Price Gouging Statute, however, that supports such a restrictive reading of the words "contracting to use." Also, Comfort Inn does not contend that "contracting to use" is either a term of art or a term with a particular meaning in the hotel industry. Thus, we must look

to the ordinary meaning of "contracting to use." In doing so, we find that the plain meaning of "contracting to use" requires a broader scope than that applied by the trial court or Comfort Inn. "To use" means "to put into service," or "to have recourse to or enjoyment of." Webster's Third New International Dictionary (unabridged) (1986).

"Contracting to use" does not require that the person or entity entering into the contract actually occupy a room. Instead, it simply means that parties to the contract have reached a binding agreement that confers the right to use the room on one of the parties. In this case, the contract explicitly provided that World Trade had the right to occupy the rooms.

Thus, "contracting to use" in the sense of OCGA § 43-21-16 (g) does not exclude the arrangements made by World Trade for the use of the rooms by others as specified in its contracts with Comfort Inn. Moreover, after careful reflection, it is not apparent how interpreting that phrase in this manner could lead to absurd or impractical consequences.

Applying the Olympic Anti-Price Gouging Statute according to its terms, we need not decide whether the trial court properly interpreted either "operator" or "guest," because nothing in OCGA § 43-21-16 (g) indicates that it protects only guests or excludes operators from its protection. Statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose. *Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816-817 (403 SE2d 97) (1991).

Because this section of the Olympic Anti-Price Gouging Statute is not limited to guests who were actually to use the rooms, World Trade, as a party contracting to use the rooms, has standing under OCGA § 43-21-16 (g) to void the contracts with Comfort Inn. A statute should be read according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (391 SE2d 5) (1990).

Further, allowing entities that contracted for hotel rooms on behalf of others to void the contract advances the legislative intent of protecting the reputation of Georgia's convention and tourist industries. In our view, adopting the construction of OCGA § 43-21-16 (g) urged by Comfort Inn would not protect the reputation of our convention and tourism industries. Instead, it would lead to the absurd result that hotel operators could violate OCGA § 43-21-16 and yet retain the payments made by tour promoters and travel agencies, even though the tour promoters or travel agencies could not legally lease or rent the rooms under their contracts with the hotel operators. See *ALLTEL Ga. Communications Corp. v. Ga. Pub. Svc. Comm.*, 270 Ga. 105, 108 (505 SE2d 218) (1998). Additionally, because credit card

companies typically do not contract for the use of rooms, we find nothing in this construction of the Olympic Anti-Price Gouging Statute that would justify the trial court's extreme extension of World Trade's argument. Statutory construction " 'must square with common sense and reasoning.' " *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367) (1992).

Therefore, as World Trade had standing under OCGA § 43-21-16 (g), the trial court erred by granting summary judgment to Comfort Inn.

2. The trial court also erred by ruling that Comfort Inn was entitled to retain the deposits paid by World Trade as liquidated damages for its breach of the rooms and amenities contracts. Although that determination may have been authorized under the trial court's holding that World Trade lacked standing to void the contract, in view of our decision on the standing issue, the trial court's grant of summary judgment on liquidated damages must be vacated. A ruling on liquidated damages is premature until the trial court decides whether World Trade was authorized to void its contracts with Comfort Inn. Further, because the trial court did not consider the merits of World Trade's claims under OCGA § 43-21-16 (g) and genuine issues of material fact may exist, World Trade is not entitled to a reversal of the trial court's ruling on its motion for summary judgment. Nevertheless, because the trial court's decision was based upon an erroneous interpretation of OCGA § 43-21-16 (g), the trial court's denial of World Trade's motion is also vacated.

Accordingly, the case is remanded for consideration of the merits of World Trade's claims in accordance with this opinion.

3. We cannot consider Comfort Inn's argument that the Olympic Anti-Price Gouging Statute is unconstitutional because the trial court did not rule on this issue. *Devins v. Leafmore Forest Condo. Assn. of Owners*, 200 Ga. App. 158, 159 (3) (407 SE2d 76) (1991). Further, we lack jurisdiction to rule on the constitutionality of the statutes of this State (Art. VI, Sec. VI, Par. II, Ga. Const. (1983)), and Comfort Inn did not file a cross-appeal on this issue. *Chester v. Ga. Mut. Ins. Co.*, 165 Ga. App. 783, 784 (1) (302 SE2d 594) (1983).

*Judgment reversed in part, vacated in part, and remanded. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JULY 15, 1999 —
RECONSIDERATION DENIED JULY 29, 1999

*Johnson, Matte & Hobgood, Thomas T. Hobgood*, for appellant.

*Stokes, Lazarus & Carmichael, Kevin R. Wolff, Michael J. Ernst,* for appellee.