A99A1860. GEORGIA PUBLIC SERVICE COMMISSION
v. SAWNEE ELECTRIC MEMBERSHIP CORPORATION.
A99A1861. GEORGIA POWER COMPANY v. SAWNEE ELECTRIC
MEMBERSHIP CORPORATION.
(529 SE2d 186)

SMITH, Judge.

In separate appeals, the Georgia Public Service Commission ("PSC") and Georgia Power Company challenge an order issued by the Superior Court of Fulton County reversing a decision by the PSC. The PSC had determined that under the "large load customer choice exception" to the Georgia Territorial Electric Service Act, OCGA § 46-3-1 et seq. ("Territorial Act" or "Act"), Georgia Power was properly selected as the electric supplier of a particular apartment complex. The trial court found otherwise. At issue here is whether the trial court erred in finding that this apartment complex did not qualify as a customer choice location within the meaning of the Territorial Act.[1] Because the trial court failed to accord proper deference to the PSC in concluding that the large load exception did not apply, we reverse.

This case originated when Sawnee Electric Membership Corporation ("Sawnee EMC") lodged a complaint against Georgia Power with the PSC alleging that Georgia Power was violating the Territorial Act by unlawfully providing service to Aylesbury Farms Apartment Complex, an apartment complex located entirely within Sawnee EMC's assigned service territory.

Georgia Power defended its actions by claiming it had a right to provide electric service to this complex under the large load exception to the Territorial Act which permits a customer to select its electric provider rather than having to receive service from the electric provider assigned to that particular territory.[2] OCGA § 46-3-8 (a). Under the large load exception, the consumer may choose an electric supplier different from the one assigned if "service [is] to one or more new premises (but if more than one, such premises must be located on the same tract or on contiguous tracts of land) if utilized by one consumer and having single-metered service and a connected load

---

[1] The Georgia Apartment Association filed an amicus curiae brief in support of Georgia Power and the decision of the PSC.

[2] The parties stipulated that the aggregate load for this apartment complex exceeds 900 kilowatts, the size load that qualifies a customer for the large load exception to the Territorial Act.

which . . . is 900 kilowatts or greater." OCGA § 46-3-8 (a).

During the construction phase of the complex, Georgia Power and Dominion Development Corporation ("Dominion"), the general contractor, entered into an arrangement by which electric usage for the whole complex would be measured at a master or pass-through meter. The electric usage of the individual apartments would be measured by separate meters, one for each apartment. This master/submetering arrangement was proposed by Georgia Power which installed the on-site electric distribution system except for the sub-meters.[3] Dominion had the submeters installed and at all times retained ownership of them.

After construction was completed, no single apartment or apartment building had a connected load of 900 kilowatts or more. Georgia Power billed Dominion based on the total electric usage indicated on the master meter, the only meter it reads. Dominion contracted with an outside company, Argen Billing Systems, to perform meter-reading services on the submeters. Argen reads the individual meters every month and computes each tenant's bill. Each tenant is billed for his unit's electric use as reflected on the individual meter, plus additional charges, including electricity for common areas. Argen also billed the tenants for their water and sewer usage. The tenants then paid Argen and not Dominion.

Georgia Power considers Dominion its customer and does not bill the tenants for electric service. The president of Dominion, Chris Driskell, testified that Dominion "is the user of electricity until a tenant moves into an apartment." Elliot Lewis, the president of Dominion Holdings, a related company, testified that the arrangement with Georgia Power enabled Dominion to purchase electric power on a bulk basis "at commercial rates," resulting in savings for the residents. Lewis felt that purchasing electricity in this manner enabled the apartment complex to be more competitive in the residential marketplace.

In an initial decision, a hearing officer agreed with Sawnee EMC that the large load exception did not apply and ordered Georgia Power to cease and desist from providing electric service to the apartment complex. While recognizing that this court's decision in *City of Norcross v. Ga. Power Co.*, 197 Ga. App. 891 (399 SE2d 725) (1990), was physical precedent only, the hearing officer felt that "the decision should be given substantial weight" because of its "remarkably similar" facts.

Georgia Power sought and obtained full commission review of

---

[3] Dominion also sought and obtained a proposal from Cobb EMC which submitted a plan for a similar master metering arrangement.

the hearing officer's initial decision. After conducting a hearing, the PSC found that the hearing officer had erred in concluding that the large load exception did not apply. The large load exception requires: the electric service be to one or more new premises; the premises be utilized by one consumer; the premises have single-metered service; and the premises have a connected load of at least 900 kilowatts at the time of initial full operation. OCGA § 46-3-8 (a). Since the complex receives electric service by means of one meter and has a connected load that exceeds 900 kilowatts, the dispute between Sawnee EMC and Georgia Power focuses on the first and second requirements of the Act. The PSC reached its decision after resolving two interconnected questions: (1) whether this apartment complex constituted one "premises" as defined by the Act and (2) whether the premises were being " 'utilized by one electric consumer . . . having single-metered service' " withing the meaning of the Act.

In refusing to embrace the initial decision of the hearing officer, the PSC expressly found: "that it is evident that the Aylesbury Farms complex qualifies under the Act as a 'premises.' Aylesbury Farms does consist of multiple buildings or structures located on one tract or contiguous tracts of land." The PSC struggled, however, with the second question of whether the landlord, Dominion, met the requirement of being "one electric consumer" as contemplated by the Territorial Act. The PSC reasoned that when deciding which entity is the "electric consumer" within the meaning of the Act, the "focus should be on the relationship of the entity in question to the electric supplier." The PSC noted that Dominion "takes service from [Georgia Power] at a single metering point. Electric service is then provided to the individual units. Each unit has an individual meter. Tenants are billed their pro-rata share of the landlord's electric bill, based upon their individual consumption." The PSC noted that "[t]he tenants do not have any obligation to or relationship with [Georgia Power]." It is undisputed that Dominion, not the tenants, was the party responsible for paying Georgia Power for the electric service. The PSC found: "[t]he method that Dominion has chosen to allocate its electric bill among the tenants does not make the tenants 'consumers' as the Commission envisions the Territorial Act intended." The PSC found: "[i]t is the determination of this Commission that the entity which has the direct relationship with the electrical supplier is the one who meets the definition of 'consumer.' " The PSC decided that since the large load exception applied, it was permissible for Georgia Power to provide electric service to the apartment complex.

Under OCGA § 50-13-19, Sawnee EMC petitioned for judicial review of the PSC's order. In seeking review, Sawnee EMC designated the PSC and its five members as respondents to its action. After the trial court reversed the PSC's decision, the PSC and Geor-

gia Power filed separate appeals. Because we find the trial court erred, we reverse.

## Case No. A99A1860

1. In its sole enumeration of error, the PSC contends that the trial court erred by applying an incorrect standard of review to the decision by the PSC. We agree.

As a general rule, decisions of administrative agencies are to be afforded great deference. *City of Atlanta Bd. of Zoning Adjustment v. Midtown North, Ltd.*, 257 Ga. 496, 499 (4) (360 SE2d 569) (1987). Here, as the agency charged with the enforcement and administration of the Territorial Act, the PSC's interpretations of that Act are entitled to great deference. *Colquitt Elec. Membership Corp. v. City of Moultrie*, 197 Ga. App. 794, 796 (399 SE2d 497) (1990); *North Ga. Elec. Membership Corp. v. City of Calhoun*, 195 Ga. App. 382, 384 (393 SE2d 510) (1990); *City of LaGrange v. Ga. Power Co.*, 185 Ga. App. 60, 63 (363 SE2d 286) (1987). Because the PSC is in a better position than the courts to determine the appropriate extent of regulation needed under the Act, much weight must be accorded to the PSC's interpretations of the Act. Id.; see also *Bd. of Zoning Adjustment of Atlanta v. Fulton Fed. Sav. &c. Assn.*, 177 Ga. App. 219, 221 (1) (338 SE2d 730) (1985).

The Georgia Administrative Procedure Act confines a court's review to the record established at the agency level unless application is made for leave to present additional evidence and the court orders that additional evidence be taken before the agency. OCGA § 50-13-19 (f), (g). A reviewing court is expressly prohibited from substituting its own judgment for that of the agency as to the weight of the evidence on questions of fact. OCGA § 50-13-19 (h). And upon judicial review, reversal is not warranted unless the substantial rights of the appealing party have been prejudiced in one of the five ways expressly delineated in OCGA § 50-13-19 (h) (1)-(5) or the agency decision was "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19 (h) (6).

But here, in reversing the order of the PSC, the trial court made no finding that the PSC had exceeded its powers, abused its discretion, or acted arbitrarily or capriciously. See *Colquitt Elec.*, supra. Instead, the court decided that the PSC's decision violated the statutory provisions of the Territorial Act.

The court decided that the PSC erred in applying the large load exception to the apartment complex. In so finding, the court disregarded the PSC's interpretation of the Act and substituted its own definition of the term "consumer," assigning the "common and ordi-

nary meaning" to the term "consumer." The court found that the individual tenants were the consumers "and not the aggregate created by the Georgia Power metering arrangement." The court also decided that the aggregation of various apartment units within the apartment complex did "not constitute 'one premises' for purposes of the large load customer choice exception." Based on those two findings, the court concluded: "[t]hus, strictly construing the large load customer choice exception to the Territorial Act, the Aylesbury Farms metering arrangement does not fall within it." In reversing the PSC in this manner, the trial court failed to give any deference to the PSC's interpretation of the Act. This was plainly inappropriate. *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 718 (5) (463 SE2d 163) (1995) (interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference).

### Case No. A99A1861

2. Georgia Power contends that the trial court erred in its legal conclusion that Dominion cannot be deemed "one consumer" within the meaning of the Territorial Act. We agree.

The cardinal rule of statutory construction is to ascertain the intent of the legislature. *Ga. Pub. Svc. Comm. v. ALLTEL Ga. Communications Corp.*, 227 Ga. App. 382, 384-385 (1) (489 SE2d 350) (1997), aff'd, 270 Ga. 105 (505 SE2d 218) (1998). In discerning the legislative intent, the purpose of the statute, its impact on the body of law as a whole, the law as it existed previously, and the harm sought to be corrected may be considered. *Ga. Pub. Svc. Comm.*, 227 Ga. App. at 385. Further, the construction of a statute must square with common sense and sound reasoning. *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (i) (418 SE2d 367) (1992).

The Territorial Act does not expressly define "consumer." See OCGA § 46-3-3. Nevertheless, we cannot agree that the PSC's determination that Dominion was "one consumer" within the meaning of the Act violated the Act's statutory provisions. OCGA § 50-13-19 (h). Nor do we find the PSC's interpretation of this Act at variance with the Act's policies, particularly the stated goal "to assure the most efficient, economical, and orderly rendering of retail electric service within the state." OCGA § 46-3-2.

The evidence indisputably showed that Georgia Power billed Dominion and no one else for the electric service being provided to this apartment complex. No contractual relationship existed between Georgia Power and the residents of the apartment complex. It was Argen, under contract to Dominion, that read the tenants' meters

and billed the tenants.[4] The undisputed evidence showed that it was Dominion which was Georgia Power's customer and that Dominion alone was contractually obligated to pay Georgia Power for the electric service entering the complex.

The record evidence demonstrates that this master metering arrangement is neither unique nor an anomaly. Jeffrey Webster, an account executive with Georgia Power, explained that Georgia Power currently serves apartment complexes in one of three ways: (1) by individual meters on every apartment unit; (2) by a master meter without submeters whereby the owner allocates utility usage based on some formula; and (3) by a master meter with individual submeters. Georgia Power offered into evidence many examples in the metropolitan Atlanta area of the third method of master metering/submetering service including: the Atlanta Housing Authority's apartment complexes, a high rise under construction at the Buckhead Loop and Georgia Highway 400, the Park Towers complex, Poplar Place Apartments, Abbott's Mill community, and Gables Over Peachtree. And, in fact, according to Webster, "[t]he Atlanta Housing Authority . . . has over 40 apartment complexes served with master meter[s] and has been allocating the usage to the residents through individual submeters for a long number of years."

Webster also testified that several malls in metropolitan Atlanta also use a master meter system with submetering, including: Gwinnett Place Mall, Perimeter Mall, Town Center Mall, and the Galleria complex. Military bases such as Fort Benning, as well as various office complexes in the Atlanta area, including Concourse Six, Hammond Joint Venture, the NationsBank building, and 999 Peachtree, also use a single Georgia Power meter and individual meters for each tenant. A Georgia Power manager for pricing and rates, Jonathan Kubler, testified without contradiction that it is company policy to let property owners "take advantage of the most cost effective rate for which they qualify."

But if, as the trial court implicitly concluded, only the end-users of electric service are "consumers" within the meaning of the Act, then under no circumstances could a multi-tenant building, mall, or office complex with a master metering arrangement qualify for the large load exception, because there would be more than one consumer. This interpretation of the Act flatly contradicts current industry practice. The trial court's finding that the term "consumer" refers to the individual tenants and not to the landlord lacks any basis in fact or law and cannot stand. See OCGA § 50-13-19 (h).

---

[4] Under this agreement, Dominion, not Argen, was solely responsible for meter maintenance and installation and the termination of service to the tenants.

The Territorial Act expressly prohibits discrimination between classes of consumers. OCGA § 46-3-11 (a); *Habersham Elec. Membership Corp. v. Mize*, 211 Ga. App. 329, 330 (439 SE2d 26) (1993). In resolving the underlying dispute, the PSC apparently refused to distinguish between property owners which lease to commercial tenants and those which lease to residential tenants, a result consistent with the Act. Since the PSC's decision was not an unreasonable interpretation of this Act and did not contradict the intent of the Act, the trial court erred in reversing that decision. See *Colquitt Elec. Membership Corp.*, supra at 796.

3. Georgia Power also contends that the trial court erred in its legal conclusion that Dominion cannot be deemed "one premises" within the meaning to the Territorial Act.

Twenty-four buildings housing 380 individual apartment units comprise the premises at issue. The Territorial Act defines "premises" as meaning:

> the building, structure, or facility to which electricity is being or is to be furnished, provided that two or more buildings, structures, or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer shall together constitute one premises; provided, however, that any such building, structure, or facility shall not together with any other building, structure, or facility . . . constitute one premises if the permanent service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure, or facility; provided, further, that an outdoor security light, or an outdoor sign requiring less than 2200 watts, shall not constitute a premises.

OCGA § 46-3-3 (6). The PSC found that this apartment complex fit within the contours of the large load exception since it consists of multiple buildings located on one tract or contiguous tracts, with the power being utilized by what the PSC determined to be "one electric consumer." We find no error in this conclusion. *North Ga. Elec.*, supra at 384.

Sawnee EMC's reliance on *City of Norcross*, a nonbinding case in which two judges concurred in judgment only, is misplaced because that case is legally and factually distinguishable. In that case, unlike here, some of the tenants had purchase options, so that the property at issue there "was not conceived as a unified rental premises for its entire useful life." Id. at 893 (2). In that case, unlike here, the superior court also gave the proper deference to the decision of the PSC. In contrast, the trial court in this case failed to accord the proper def-

erence to the PSC's construction of "premises" or to the PSC's interpretation of the meaning of "consumer," despite the rule of law that an administrative interpretation of a statute must be accorded great weight. See *City of LaGrange*, supra at 63. Because the record does not show that the PSC's decision violated the statutory provisions or was affected by legal error, no basis has been shown for reversing the decision of the PSC under OCGA § 50-13-19 (h). *Bd. of Natural Resources v. Walker County*, 200 Ga. App. 301, 308 (5) (407 SE2d 436) (1991).

*Judgments reversed. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 1, 2000 — 

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, Alan Gantzhorn, William R. Phillips, Assistant Attorneys General*, for appellant (case no. A99A1860).

*Troutman Sanders, Kevin C. Greene, Susan P. Wilkerson*, for appellant (case no. A99A1861).

*Sutherland, Asbill & Brennan, James A. Orr, Charles B. Jones III*, for appellee.

*McCullough Sherrill, John A. Sherrill, Corin M. McCarthy*, amici curiae.