## A03A2474. CITY OF BARNESVILLE v. LITTLEJOHN.
### (590 SE2d 376)

ELDRIDGE, Judge.

Jesse Littlejohn applied for disability retirement benefits pursuant to the City of Barnesville's ("City") retirement plan. Benefits were denied, and Littlejohn filed suit in the Superior Court of Lamar County. Each party filed a motion for summary judgment. Without asserting a factual basis, the superior court denied both motions, finding that "there are remaining issues of material fact for jury resolution." We granted the City's application for interlocutory appeal in order to consider certain provisions in the City's disability retirement plan which are susceptible to misinterpretation. In so doing, we affirm the denial of the City's motion for summary judgment.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

With these precepts in mind, the record shows that Littlejohn began working for the City in the middle 1970s as an equipment operator and meter reader. Over the course of this employment, it is undisputed that he twice suffered debilitating back injuries. In the mid-1990s, Littlejohn's back problems prevented him from performing his duties as an equipment operator, and the City modified his employment to compensate for his injuries. In 1997, however, the City determined that Littlejohn's employment should be terminated. The record contains a letter in which the City Manager confidentially sought legal advice from the City's attorney about the termination:

> [T]he City of Barnesville has made great efforts to support the rehabilitation of Mr. Jesse Littlejohn with continued hope that he would eventually be able to return to full and productive employment. However, as we discussed in our phone conversation today, the restricted duty-part-time work that Mr. Littlejohn has been assisting with is complete and we have no other assignments suitable for his condition. Therefore, we propose to terminate Mr. Littlejohn on Thursday, October 16, 1997. Please advise me regarding this mat-

---

[1] (Citations omitted.) *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

ter and particularly the proper manner in which to serve notice of the proposed termination.

During a subsequent meeting with several City officials, Littlejohn was terminated effective January 5, 1998.

The next month, February 1998, Littlejohn went to the City offices in order to apply for a disability retirement. He was informed by a City benefits counselor that, under the City's ordinance governing retirement, he must first obtain a disability determination and award from the Social Security Administration ("SSA"). The counselor told Littlejohn that she "needed the notice of award from social security declaring him disabled[ ]" before he could fill out an application form. It was explained that City benefits counselors "oftentimes typically don't ask for an application — a disability application unless the notice of award indicates that they would be eligible to receive that disability benefit."

On February 19, 1998, Littlejohn filed for disability benefits from the SSA, 42 USC § 401 et seq. In April 1998, he was denied those benefits. Littlejohn filed a motion for reconsideration, which was denied. Thereafter, he sought and obtained a hearing before an administrative law judge ("ALJ"). On February 26, 1999, the ALJ issued an unfavorable decision, finding that Littlejohn was not disabled under the law. Littlejohn appealed the ALJ's decision, which was affirmed.

Thereafter, in August 2000, on advice from counsel, Littlejohn started afresh and filed a second application for disability benefits from the SSA. It is undisputed that the basis for Littlejohn's August 2000 application was exactly the same as his February 1998 application, i.e., the back injuries he suffered during his period of employment with the City. In March 2001, the SSA found that Littlejohn qualified for disability; in its award notification, the SSA stated that Littlejohn,

became disabled under our rules on February 27, 1999. This is different from the date given on the application.

The SSA determined that Littlejohn's disability began one day after the February 26, 1999 date of the ALJ's decision finding that Littlejohn was *not* eligible for disability.

After his SSA payments began, Littlejohn again sought disability retirement benefits from the City. The City denied Littlejohn's application for disability retirement on the grounds that (a) Littlejohn was not terminated because of disability, as required by the City ordinance governing retirement, but because the job on which he was working was completed; (b) Littlejohn failed to file for and be

awarded SSA benefits within one year following his termination, as required by the ordinance; and (c) Littlejohn's physical disability did not begin before his employment ended, as required by the ordinance, since the SSA determined his period of disability as beginning on February 27, 1999, and Littlejohn was terminated on January 5, 1998. The City based its decision on Article II, § 16 (a) (1) of the ordinance, which states in pertinent part,

> *Disability* shall mean: A physical or mental disability of a participant who because of such disability becomes entitled to receive disability insurance benefits under the Federal Social Security Act, as amended; provided, however, Such disability commenced on a specified date during the period of the Participant's employment with the City.

The City also relied upon Article VI, § 3 (c) of the ordinance, which states,

> A Participant whose employment is terminated because he is disabled shall be entitled to a Vested Benefit provided his period of Disability began on or before the Participant's date of Termination of employment as a result of a Disability. No Disability benefit shall be payable unless application for such benefit is made within one (1) year after employment is terminated as a result of such Disability, except when a delay is caused by a pendency of a Disability determination by the Social Security Administration.

In addition, the City relied upon a synopsis of the City's retirement plan contained in the "City of Barnesville Retirement Handbook." With regard to disability benefits, the handbook interprets the articles of the ordinance and states,

> You are entitled to disability retirement benefits from the City's plan provided you are a participant in the plan, your employment terminates as a result of total and permanent disability, and you apply and qualify for Social Security disability benefits within one year from your termination date.

The handbook is for informational purposes only and specifically states that the text of the ordinance "will control in deciding any questions which may arise concerning the plan."

After the City denied Littlejohn disability retirement benefits, he filed suit. The City filed a motion for summary judgment, arguing that the above-cited portions of the City's ordinance authorized sum-

mary judgment as a matter of law. The trial court denied the motion. The City appeals. *Held*:

1. (a) The City argues that Littlejohn "is not eligible for a disability retirement because he was not terminated because of a disability," as required by the ordinance. The City claims it "terminated Appellee's employment, effective January 5, 1998, because there were no positions available for Appellee for which he was qualified."

The record, however, contains evidence that Littlejohn was terminated because the City had "no other assignments suitable for his condition." It further appears from the record that it was *because* of Littlejohn's physical limitations that there were no other assignments for which he was qualified. Thus, the reasonable inference arises that, but for his "condition," Littlejohn's employment with the City would not have been terminated. Accordingly, an issue of fact surrounding the basis for Littlejohn's termination remains for jury determination, and the trial court did not err in denying summary judgment on this ground.

(b) In this same claim of error, the City makes an additional, novel argument based upon the definition of "disability" contained in Article II, § 16 (a) of its ordinance:

> *Disability* shall mean: A physical or mental disability of a participant who because of such disability becomes entitled to receive disability insurance benefits under the Federal Social Security Act, as amended.

The City claims that, under this definition, an employee must be entitled to receive SSA disability benefits *before* his or her employment is terminated in order to be considered "disabled"; the City argues that "[a]t the time of his termination, Appellee was *not* entitled to receive such benefits" and, thus, was not terminated for a "disability" as defined by the ordinance. (Emphasis in original.)

This argument, of course, ignores the fact that it is only after gainful employment ceases that entitlement to SSA disability benefits arises.[2] Under its "Catch Twenty-Two" interpretation of the ordinance, the City would seldom have to pay a disability retirement because, prior to an employee's termination for a physical or mental impairment, he or she could not qualify to receive SSA disability benefits due to employment with the City and, thus, would not be considered by the City to have a "disability." "Statutory construction must square with common sense and reasoning."[3] The ordinance's require-

---

[2] See generally 42 USC § 416 (i) (1) (to qualify for SSA disability, adults must have a physical and/or mental problem that keeps them from working for at least 12 months, or is expected to result in death).

[3] (Citation and punctuation omitted.) *World Trade Business v. Amit*, 239 Ga. App. 383, 387 (1) (521 SE2d 40) (1999).

ment that an employee terminated for a physical or mental impairment "*becomes* entitled to receive disability insurance benefits under the Federal Social Security Act"[4] cannot reasonably be read to mean that, at the time of termination, the employee has already met such entitlement.

2. The City argues that Littlejohn failed to apply and qualify for SSA benefits within one year of his termination as required by the ordinance. In support of its contention, the City cites that portion of the Retirement Handbook which states,

> You are entitled to disability retirement benefits from the City's plan provided you are a participant in the plan, your employment terminates as a result of total and permanent disability, and you apply and qualify for Social Security disability benefits within one year from your termination date.

The handbook, however, is not the ordinance, and — as the handbook explicitly recognizes — the ordinance governs. In that regard, Article VI, § 3 (c) of the ordinance states in pertinent part,

> No Disability benefit shall be payable unless application for such benefit is made within one (1) year after employment is terminated as a result of such Disability, except when a delay is caused by a pendency of a Disability determination by the Social Security Administration.

Read as a whole, the "application" for disability benefits cited in Article VI, § 3 (c) clearly refers to an employee's application to the City for a disability retirement, which application deadline may be extended while awaiting an SSA disability determination.[5] Contrary to the handbook, there is absolutely no requirement under the ordinance that a disability-terminated employee *qualify* for SSA benefits within one year of termination.[6] The only article of the ordinance that speaks to the necessity of qualifying for SSA benefits states only that, to be considered disabled, an employee must "become" entitled to receive SSA benefits, without regard to time constraints.[7]

In this case, it is undisputed that Littlejohn applied to the City

---

[4] (Emphasis supplied.) City of Barnesville Ordinance, Article II, § 16 (a).

[5] Notably, under the City's interpretation that the "application" deadline refers to an SSA application, the SSA disability application deadline may be extended due to delay caused by an SSA disability determination, which perforce means the SSA has a disability application before it on which to make such determination. Needless to say, this is fallacious circular reasoning that we are bound to reject.

[6] Certainly, such a requirement would have serious problems since a disability-terminated employee has no control over the time in which the SSA makes a decision.

[7] City of Barnesville Ordinance, Article II, § 16 (a) (1).

for a disability retirement the month after he was terminated. His application was rejected because a City benefits counselor determined such application cannot be received without an SSA award. Several years later, immediately after obtaining his SSA award, Littlejohn again applied to the City for a disability retirement. Under these circumstances, there is an issue of fact as to whether Littlejohn's application to the City for a disability retirement was timely and, if untimely, whether any delay was "caused by a pendency of a Disability determination by the Social Security Administration."[8] Consequently, the trial court did not err in denying the City's motion for summary judgment on this basis.

3. In its last claim of error, the City contends Littlejohn is not entitled to a disability retirement because his disability did not begin on or before his employment ended on January 5, 1998, as required by the ordinance. In support of this contention, the City cites Article II, § 16 (a) (1), which states,

> *Disability* shall mean: A physical or mental disability of a participant who *because of such disability* becomes entitled to receive disability insurance benefits under the Federal Social Security Act, as amended; provided, however, *Such disability* commenced on a specified date during the period of the Participant's employment with the City.

(Emphasis supplied.) The City then directs our attention to the SSA award notice that states Littlejohn "became disabled under our rules on February 27, 1999," which date is after Littlejohn was terminated.

In making this argument, we feel the City misunderstands the nature of an SSA determination as to when a period of "disability" begins; the SSA's determination is a legal conclusion, not a medical one. Accordingly, the SSA's determination is made "under [its] rules." In light of this, an SSA conclusion as to when a period of disability begins is influenced by many factors, including, as in this case, whether a prior disability application had been filed and the results thereof.[9] In fact, when Littlejohn was initially denied disability benefits, the SSA informed him that,

> You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with this decision and you file a

---

[8] City of Barnesville Ordinance, Article VI, § 3 (c).

[9] See 42 USC § 405 (b) (3) (A), (B) (after an adverse determination, choosing to reapply for benefits rather than requesting review of the determination may effect entitlement to benefits).

new application instead of appealing: You might lose some benefits or not qualify for any benefits and we could deny the new application using this decision if the facts and issues are the same.

Here, in its award notification pursuant to a second application, the SSA determined that Littlejohn's period of disability began the day after the ALJ's unfavorable decision on Littlejohn's first application. It is undisputed, however, that the physical disabilities which formed the basis for the ALJ's decision *and* the SSA award occurred during Littlejohn's employment with the City. The record contains no evidence of any occurrence during the one day between the ALJ's initial denial of benefits and the SSA's determination that disability began. Under the law, res judicata barred an award of benefits prior to the ALJ's unappealed decision.[10] But this legal principle does not affect the physical disability on which the SSA award was actually predicated — or the specific date on which such physical disability occurred.

In that regard and as applied to this case, Article II, § 16 (a) (1) of the ordinance requires that Littlejohn have a "physical disability" and that *"because of such disability* [he] becomes entitled to receive disability insurance benefits under the Federal Social Security Act"; the ordinance requires that *"[s]uch disability* commenced on a specified date during the period of [Littlejohn's] employment with the City." The ordinance does *not* state that the SSA's legal determination as to when an employee's period of disability begins for purposes of calculating SSA benefits must be within the period of the participant's employment with the City. After all, to hinge the right to a disability retirement upon the date on which — under SSA rules — an applicant may begin to receive SSA benefits, as opposed to the date on which the physical disability occurred that formed the basis for the SSA award, would hardly promote the purpose of a disability retirement program, i.e., to provide for those employees who are injured *on the job* to the extent that they can no longer work.

Since there is evidence of record that Littlejohn's physical disability began on a specific date while he was employed by the City and that he was awarded SSA benefits based upon that physical disability, the trial court did not err in denying the City's motion for summary judgment on the basis urged.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[10] 20 CFR §§ 404.905; 404.955; 404.981; see, e.g., *Thompson v. Richardson*, 452 F2d 911 (2nd Cir. 1971) (SSA regulations provide that determination shall be final and binding on the parties unless it is reconsidered).

Decided October 29, 2003 —
Reconsideration denied November 17, 2003.

*Elarbee, Thompson & Trapnell, J. Lewis Sapp, William A. Pinto, Jr.*, for appellant.
*Don E. Snow*, for appellee.